**Billy Junius RUSSELL, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 67–C–13–C.**

United States District Court
W. D. Virginia,
Charlottesville Division.

Jan. 12, 1968.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Sentenced to life imprisonment upon his conviction of the murder of Alphonzo William Patterson in the Circuit Court of Nelson County on March 1, 1961, Billy Junius Russell comes before this court with a petition for a writ of habeas corpus seeking relief from the sentence which he is now serving. He claims ineffectiveness of his trial counsel, a prejudicial admission of an allegedly involuntary confession, lack of confrontation of a material prosecution witness, and that the failure of the clerk's order to recite that the jury was "free from all exceptions" deprived the trial court of jurisdiction to try him.

Thorough state habeas corpus proceedings were had as to the first and the last of the above allegations and as to a third point, not at issue here, except as it bears upon ineffective representation, that he was denied his right to appeal. The record developed at the habeas corpus hearing before Judge Quesenberry in the Circuit Court of Nelson County and the record on appeal to the Supreme Court of Appeals of Virginia, both of which have been reviewed by this court and are hereby incorporated into

and made a part of the record in this proceeding, show clearly that as to the claims of ineffective representation and failure of jurisdiction of the trial court, petitioner has exhausted his state remedies. These allegations, therefore, are properly before this court and will be considered. However, as to Russell's claims that the written confession he signed was involuntarily given, and that he was denied the right to confront and cross-examine a witness, presented for the first time in this proceeding, 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) requires that the courts of the State of Virginia first be given the opportunity to pass upon them. The following discussion will, therefore, not take into account these two allegations.

Petitioner never has disputed the factual circumstances of the crime nor that he committed it. A brief review of these facts and a summation of the presentation of defendant's case before the trial court will serve to place in proper perspective his allegations of ineffective assistance of counsel.

Alphonzo William Patterson, the victim, was 25 years old. Billy Junius Russell was 23. These two, apparently friends, met at another's home between 6:30 and 7:00 on Saturday night, December 3, 1960 and Russell's older brother, James, picked them up and took them in his car to the home of Melvin Kidd near Gladstone in Nelson County, approximately six miles away. Apparently they went to the Kidd home because Kidd had a T.V. set and there was a championship boxing match on that night. It is established that both Patterson and Billy Russell were interested in one of Melvin Kidd's daughters which may have contributed to their desire to go to his home.

About thirty minutes after arriving at the Kidd home, Russell and Patterson became involved in an argument with each other. The subjects of contention were Russell's hat which he claimed that Patterson had taken and the girl in which both had an interest. The scene of contention soon shifted with both principals going outside, at which point Patterson apparently chased Russell down the road and issued some threatening words after him.

Some ten or fifteen minutes later, so the evidence indicates, both Patterson and Russell were back in the house watching T.V. After a few minutes of relative peace, the argument began again. Both prior to that time and presently, Patterson and Russell were drinking. Billy Russell took off his coat and said he was going to whip Patterson, but at this point James Russell stepped in and told Billy to break it off and that he would take him home. He did so. They arrived about 10:00 o'clock and James let Billy out of his car about a quarter of a mile from their home, which as noted previously, was about six miles from the Kidd place. James told Billy to go home and stay home. Billy told James he was not going to stay home that he was going to go back to the Kidd place and get Patterson one way or another. Billy walked home from where James had left him off, got his 12 gauge shotgun and a shell, walked about one-half mile to the home of Jack Franklin, and, telling Franklin that he wanted to go coon hunting with the Glover boys, asked Franklin to give him a ride in his car.

Obliging, Franklin took Billy to the highway intersection about a city block from the home of Melvin Kidd. Billy walked the rest of the way, hid his shotgun under a big bush in the Kidd yard, and again went inside the house. When he got inside, Billy Russell asked for Patterson and was told that Patterson was outside in his car asleep. Russell then immediately went outside, picked up his shotgun from where he had left it under the bush in the yard, walked a short distance to the driver's side of Patterson's car where he found Patterson lying in the front seat of the car under the wheel apparently asleep. Billy then opened the driver's front door of the car, raised his loaded shotgun so that it was pointed at and very close to Patterson's head and fired. Billy walked back

into the yard, dropped his shotgun, entered the house and told those there that he had shot Patterson, that he had done what he had wanted to do for a long time, and that he didn't care if he got a hundred years. He requested them to call the law.

Patterson died soon afterward as a result of a massive head wound.

Petitioner was taken into custody. The next day, December 4, 1960, a magistrate found probable cause to believe that he was guilty of the murder of Alphonzo Patterson and bound him over for the grand jury which convened in January 1961. In the January session of the grand jury an indictment against the petitioner was returned.

An arraignment was held before the Honorable C. G. Quesenberry on January 23, 1961. The order of the court entered that day shows that petitioner was brought before the court and asked if he had counsel. On petitioner's reply that he neither had counsel nor could afford one, the court appointed Mr. Robert Marshall of Lovingston, Virginia to represent petitioner. After an undisclosed amount of consultation between petitioner and his attorney, petitioner entered a plea of not guilty. The case was then set for trial commencing March 1, 1961 and the accused was remanded to jail.

During the time of more than a month which elapsed between the arraignment and the time of the trial, Mr. Marshall consulted several times with his client. He discussed with Russell the precise nature of the crime with which he was charged, secured from Russell the names of several witnesses, and went over with him a copy of the confession which he had made immediately after his arrest.

Petitioner was tried before a jury March 1, 1961 on his plea of not guilty. As a complete transcript was not made, we have no record of Mr. Marshall's conduct of petitioner's defense during the trial. We do know, however, that petitioner received less than the maximum sentence for what could easily have been viewed by the jury as a brutal slaying.

Petitioner stresses two instances of ineffectiveness of his counsel during the trial. First of all, he states that Mr. Marshall failed to object to the introduction of the confession which he claims was involuntarily given. The narrative statement of the trial, however, refutes this contention for it shows that Mr. Marshall did object to the introduction of the confession on the grounds that the defendant had not been advised of his right to an attorney before he made the statement and that he had signed the statement upon the request of the officer and without any knowledge of its contents. Petitioner's second point is that Mr. Marshall, although he know that petitioner had consumed a large amount of alcohol prior to the time of the crime, did not stress the point evidentially and failed to offer an instruction that a finding of intoxication could go toward eliminating premeditation thus reducing the degree of the crime charged from first to second degree murder. That this does not raise to the level of ineffectiveness will be discussed later.

At the conclusion of the trial and after the imposition of sentence, petitioner apparently was quite shocked at the time he had received. He asked his counsel if he could appeal, and according to Mr. Marshall, was advised that no appeal could be taken as the trial court had not committed any appealable error. Petitioner insists that Mr. Marshall advised him that no appeal could be taken because an appeal was expensive and petitioner had no money. Mr. Marshall denies this and has testified that his reasons for advising against appeal were solely that, in his opinion, there was no ground upon which an appeal could be taken. Petitioner did not request that his desire to appeal be brought to the attention of the court nor was he advised by his counsel that as a pauper he would not have to bear the expenses of an appeal. Apparently, petitioner never made his desire to appeal known to the trial court and until some time after incarcerated did not take any further action to obtain one.

Since Mr. Marshall was appointed to represent petitioner on January 23, 1961, it is evident that petitioner did not have the benefit of counsel at the time of his preliminary hearing. However, at the time of his arraignment and at all times thereafter until the termination of his trial, petitioner did have the services of Mr. Marshall, a practitioner with some thirty years of experience. No suggestion has been made that Mr. Marshall did not have adequate time to prepare for the trial. In fact, all the evidence indicates that during the month that intervened between arraignment and trial, Mr. Marshall did devote a considerable amount of time to petitioner's case. The allegations, then, turn solely upon whether Mr. Marshall's actions during and after the trial amount to a denial of effective assistance. This court is of the opinion that they do not.

The preliminary hearing in Virginia is not a critical stage. Rambo v. Peyton, 380 F.2d 363 (4th Cir. 1967). Counsel having been present on all other occasions, it is clear that no claim of a denial of right to counsel can lie. Furthermore, counsel's appointment well before the time of trial and the evidence of his having devoted some time during that period to the preparation of a defense for the petitioner belies the assertion of inadequate preparation for trial. Cf. Fields v. Peyton, 375 F.2d 624 (4th Cir. 1967).

Counsel's failure to object to the introduction of petitioner's signed confession having been disproved by reference to the narrative statement of the trial, there remains only the question of whether ineffective assistance at the trial stage may be found in counsel's failure to develop the possible defense of intoxication and to offer an instruction to reduce the degree of the offense charged.

Even if it were possible to classify counsel's failure to introduce the matter of drunkenness as a mistake as opposed to an affirmative trial tactic, the question still must be asked whether this particular "slip", so calls into question the properiety of the entire trial and

causes it to have been a denial of due process. The Fourteenth Amendment does not require perfection of the lawyer. Nevertheless, the presence of one possible mistake should signal close scrutiny of the lawyer's overall conduct; but in this case drawing upon the narrative statement of the trial and the record developed in the state habeas corpus proceedings it is quite evident to this court that counsel's overall performance was very good and that his service was beneficial to his client. By no stretch of the imagination can this case be thought to rise to the level where ineffective assistance of counsel has rendered the trial a sham. Cf. Webb. v. Peyton, 345 F.2d 521 (4th Cir. 1965).

Moving on now to the question of the petitioner's right to appeal, Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. People of the State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); and Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 2d 493 (1967) raise the possibility that since petitioner expressed a desire to appeal it was incumbent upon counsel to see that he obtained one. At the very least counsel had the duty to advise petitioner of his right to appeal as an indigent. Magee v. Peyton, 343 F.2d 433 (4th Cir. 1965). Of course, counsel's duty arises only if a request is forthcoming from the petitioner. Allred v. Peyton, 385 F.2d 360 (4th Cir. Nov. 7, 1967). Whatever infirmities there might have existed in this case by reason of counsel's well-intentioned discouragement of an appeal (Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963)) this court feels that they were negatived when a delayed appeal was subsequently granted by the Virginia Supreme Court of Appeals. The failure of counsel to advise of an indigent's rights to an appeal has been deemed ineffective assistance. Puckett v. State of North Carolina, 343 F.2d 452 (4th Cir. 1965). However, this, too, was cured by the belated appeal. Although a different result may obtain under some circumstances, the court is

convinced that here counsel's well-considered advice to petitioner cannot be considered indicative of overall ineffective assistance; in fact, it even supports the contrary conclusion that counsel was most familiar with the case and because of his familiarity was able to evaluate and to rule out the possibility of judicial error.

Petitioner next asserts a jurisdictional defect in that the trial court's order reciting the incidents of his trial does not contain the recitation that the jurors were "free from exception". The order reads in pertinent part:

> Whereupon, the accused, having previously been arraigned and after private consultation with Robert L. Marshall, his counsel, pleaded not guilty to the indictment, which plea was rendered by the accused in person, and the accused having requested a jury for the trial of this case, there came a jury to wit: [follows the names of the 12 jurors] which jury was duly impaneled, selected and sworn in all respects as directed by law.

Notably, petitioner does not assert that the jury was not free from exception; he merely insists that the order must have contained the absent words. No further factual development is necessary; the question is solely one of law.

 A diligent search has revealed to this court no requirement in Virginia law that the order of the court must recite that the jury by which a criminal defendant is tried has been found free from exception. Indeed, that the order recites that the jury was impaneled, selected and sworn gives rise to the presumption that all jurors were free from exception. The selecting of the jury of twelve by each side exercising its four peremptory challenges can commence only when a panel of twenty persons *free from exception* has been assembled. The completion of the process of selection and the subsequent swearing of the jury should preclude the defendant as provided in Virginia Code § 8–201 from thereafter advancing exceptions to the jury.

Furthermore, petitioner's reference to the case of Cave v. Cunningham, 203 Va. 737, 127 S.E.2d 118 (1962) is completely inappropriate. That case concerned the question of whether the existence of the cure-all phrase "as provided by law" in the judge's trial order could supply the jurisdictional requirement imposed by Section 8 of the Virginia Constitution that the concurrence of the Commonwealth's Attorney be entered of record before the accused could be tried without a jury. The Virginia Supreme Court of Appeals held that the phrase was insufficient, because Section 8 of the Virginia Constitution exacts the specific requirement that the consent of the Commonwealth's Attorney be entered of record. The principal distinction between that case and this is that there a specific constitutional requirement was applicable whereas here there is not even a statutory or judicial requirement that the order of the court reflect that the jury was free from exception.

The court finds that those issues raised by petitioner which are properly before this court do not entitle him to the writ which he seeks. Since the petitioner has not exhausted his state remedies on the claim that his confession was involuntarily given and that he was denied the confrontation of a material prosecution witness, these claims are not properly before this court and this court expressly declines to rule on them.

For the reasons enumerated in the above opinion, it is accordingly ORDERED that petitioner's application for a writ of habeas corpus be and the same hereby is denied and that his petition be dismissed.

This dismissal is without prejudice to the further prosecution thereof upon a verified showing that petitioner has exhausted his state remedies as to the claims not here considered.

It appearing to the court that the petitioner raises no substantial question, it is further ORDERED that, if the petitioner wishes to appeal, an application for a certificate of probable cause will be denied by this court.

The Deputy Clerk of this court will transmit a certified copy of this opinion and judgment to the Honorable Reno S. Harp, III, Assistant Attorney General, Commonwealth of Virginia, Richmond, Virginia and will also transmit a certified copy to the petitioner.