**James Lewis GRIFFIN, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 67–C–61–D.**

United States District Court
W. D. Virginia,
Danville Division.

May 8, 1968.

Overton P. Pollard, Asst. Atty. Gen., Richmond, Va., for respondent.

**OPINION and JUDGMENT**

DALTON, Chief Judge.

Alleging that he was convicted through the use of a confession involuntarily obtained and through the lack of effective assistance of counsel, petitioner comes to this court seeking a writ of habeas corpus. He makes the additional claim that he was denied his right to appeal the conviction rendered January 27, 1964 in the Circuit Court of Henry County. Through state habeas corpus proceedings the petitioner has exhausted his state remedies as to the allegations

presented here, and also provides this court with a factual background against which to evaluate the petitioner's claims. On the basis of the evidence presented, this court concludes that the petitioner's constitutional rights were adequately protected and that he is not entitled to the writ which he seeks.

This court believes the following to be a correct statement of the facts.

On December 2, 1963, the petitioner James Lewis Griffin was accosted by two deputy sheriffs of the Henry County Sheriff's Department who requested that petitioner come with them to the Sheriff's Office. They did not at that time indicate to the petitioner that he was under arrest and he has not denied that he went with them voluntarily. Petitioner was held at the Henry County Sheriff's Office for a matter of hours but there is no indication that he was interrogated in any way during that period.

At about 8:00 or 9:00 o'clock that evening authorities from Patrick County arrived. They had reason to believe that petitioner was implicated in offenses which had occurred in Patrick County and they took petitioner back there with them. Prior to leaving the Henry County Sheriff's Office, however, petitioner was asked some preliminary questions by the Patrick County Sheriff and was told that he did not have to say anything if he didn't want to.

The coercion which petitioner claims should vitiate his Henry County convictions occurred during the ride back to Patrick County. There are various versions of what happened during the ride. Petitioner says that the Sheriff urged that he confess and said that the others who had been involved with him were presently being held in Patrick County and had already confessed. Then, petitioner claims, he was interrogated by Mr. Clark, the Commonwealth Attorney of Patrick County, who told him that "I guess you know that I could get you twenty years out of it". Petitioner alleges he understood this as a threat that

if he didn't confess Mr. Clark would see to it that he got twenty years. However, even under petitioner's version there is no indication that at any time during the drive was he questioned or urged to confess to anything but the offenses committed in Patrick County, the County where he was being taken and the County apparently where his accomplices were then being detained.

Deputy Sheriff Rorrer testified on behalf of the Commonwealth that he does not remember any of the substance of the conversation which took place during the ride back to Patrick County, or even if there was any conversation about the crimes in which petitioner was thought to have been involved, that while he cannot be positive, he believes that Mr. Clark did not accompany them on the trip.

Upon his arrival in Patrick County, petitioner was taken to the Commonwealth Attorney's Office and one of petitioner's alleged accomplices, Clinton Fogelman, was brought down. In petitioner's presence Fogelman was asked to repeat what he had previously told the Patrick County officials. In petitioner's words: "He, Fogelman, told them, you know, every place we done and who done what. They got it all." Fogelman, in the process of mentioning all that he and the petitioner had done, mentioned the two breaking and enterings which took place in Henry County. So far as the record shows, this is the first time either the Patrick County authorities or the Henry County authorities knew that petitioner was responsible for infractions which had taken place in Henry County. Also this was the first time that petitioner knew he was being questioned or implicated in the offenses in Henry County. Petitioner continued to deny any involvement in the offenses which Fogelman outlined but, he claims, fearful of the Commonwealth's prediction that he would get twenty years, he decided to sign the prepared statement.

The signed confession which was used in connection with the Henry County cases, however, is not the one mentioned

above. Just how the second confession came about is explained by a subsequent sequence of events. Upon learning that petitioner was implicated in offenses which had taken place in Henry County, the Patrick County authorities immediately notified their Henry County counterparts. The next morning, deputies Hill and Steele travelled to Patrick County. They first visited Harvey East, one of the other two men who had allegedly accompanied petitioner during the Henry County breakings. Mr. East, at 9:30 that morning, gave a statement admitting that he and the petitioner had broken into and entered the Midway Auto Parts Company and the Drewey Mason School. With this signed confession in hand, the Henry County deputies then approached the petitioner. They immediately advised him of his right to remain silent, his right to counsel and the fact that anything he said could be used against him in court. Since Griffin could not read, Deputy Sheriff Hill read him Mr. East's statement, noted petitioner's assent and then petitioner signed it.

Petitioner returned with the deputies to Henry County where a warrant for his arrest was issued on December 4 and executed on December 9. The formal waiver of a preliminary hearing was entered on December 18, 1963. Furthermore, although it is impossible to tell precisely from the testimony, it appears that petitioner entered an informal waiver of a preliminary hearing immediately upon his return to Henry County.

Petitioner was then bound over awaiting action by the grand jury and, when on January 9, 1964 the grand jury returned a true bill on all three counts, the court appointed counsel to represent the petitioner.

Shortly after his appointment, Mr. Richardson, the court appointed counsel, went to see his client. During the course of their initial discussion petitioner told Mr. Richardson that he had signed a confession to the crimes with which he was charged. Mr. Richardson's recollection, which the court accepts as being accurate to the extent that a recollection can be, is as follows:

\* \* \* as I recall from the outset he admitted that he did these things, that he wanted to plead guilty, that he had made the confession, and he wanted to get it over with just as quickly as possible and wanted me to see what I could do for him. I then obtained a copy of the confession and sometime later I went back and discussed this confession with him. I don't recall specifically what we discussed about the confession but we did go over the contents of it and in the normal conversations I am sure that I would have asked him was he coerced or was he promised anything by making the confession. I don't recall the specific discussion that we had but I do not recall that he ever made any objection that stated anything about making the confession under duress. After I discussed this confession with him, I don't recall him wanting me to interview any witnesses or put up any defense. Then I contacted the Commonwealth's Attorney— before that I did go into the background of James Griffin and get sort of a character reference from him, what he had done over the years, etc., what other trouble he had been in, and made a little diagram of his background. Then I contacted the Commonwealth's Attorney, Mr. Covington, and we discussed this matter and he agreed to make a recommendation of 2 years on each of the charges. I later went back and discussed this recommendation with James Griffin and he stated that he would consent to take this. Now, I don't know—don't recall specifically what James Griffin and I discussed about a jury trial, but in the normal procedure I always ask the prisoner if he wants one and normally when we get a recommendation such as this it's up to him to take this or take his chances with a jury. I don't recall specifically my conversation with him but this is the practice that I normally follow and

if at any time the prisoner indicates that he wants a jury trial, I always tried his case before a jury whether he has a defense or not. A lot of times we try cases just to see if the jury would come out with a better length of time, so to speak, than what the Commonwealth recommends. The next step was the trial and I remember talking to James Griffin before the trial to tell him what to do when he appeared before the Judge and what our previous discussions had been. And at that time he still indicated he wanted to plead guilty, still wanted to take this particular sentence, and with that I instructed him what would take place in front of the Judge. I do recall that when we appeared before the Judge, I made a brief statement about his background and told the Judge about the recommendation that the Commonwealth had made and the Judge accepted the recommendation and sentenced him to 2 years on each count.

■ Petitioner's allegations with respect to inadequate representation of counsel are two-fold, and the court will first concern itself with the alleged denial of petitioner's right to appeal. The evidence in the record concerning the assessed denial of the right to appeal is regrettably scant. The only source is petitioner's testimony. Summarized, petitioner claims that he was never advised of his right to appeal, but on the other hand, he never inquired about an appeal nor did he give anyone any indication that he desired one. The court finds that in no case is an affirmative duty placed upon counsel to advise petitioner that he has the right to appeal. See Allred v. Peyton, 385 F.2d 360 (4th Cir. 1967); Pettus v. Peyton, 207 Va. 906, 153 S.E.2d 278 (1967). Of course, if petitioner has requested an appeal, counsel is under a constitutional duty to advise him of his right to appeal as an indigent and to help him prosecute that appeal. Magee v. Peyton, 343 F.2d 433 (4th Cir. 1965); Russell v. Peyton, 278 F.Supp. 804 (W.D.Va.1968). But here, having

been impressed throughout by petitioner's acknowledgement that he had committed the crimes in question and with his desire to plead guilty, culminating in petitioner's agreement to accept a recommendation of six years, a favorable sentence in counsel's opinion, there would have been no reason for counsel even to suspect that the petitioner would wish to appeal. Petitioner further contends that the late appointment of counsel denied him the possibility of effective assistance and second that counsel's failure to advise him of his right to a jury trial is such incompetence as amounts to ineffective assistance. In the state hearings petitioner made much of the fact that at the time counsel was appointed, some thirty-seven days after his initial arrest, all of the harm which the presence of counsel could have prevented had been done. No inference can be made that the "critical stage" for which counsel has traditionally been required occurred at the beginning of custody or the commencement of interrogation. This court may only consider this case under the traditional rules defining the critical stages at which counsel is required. In this regard, the court finds that Mr. Richardson was appointed as soon as the indictment was returned charging petitioner with the crimes for which he was tried. Mr. Richardson was an able attorney who, prior to the time of the trial, had had several years of experience both in civil and criminal practice. The available evidence demonstrates that counsel did provide adequate representation.

■ Petitioner's allegations of an involuntary confession have been reserved to last because they present a more serious question and require a more detailed discussion. We are, it must be remembered, dealing in the pre*Escobedo* pre*Miranda* era in which the failure to provide petitioner with counsel and the failure to advise him of his rights are not automatically grounds for invalidating a confession subsequently obtained. In this instance, the court must be guided by traditional concepts of involuntari-

ness; that is, whether petitioner's confession was the result of rational choice or whether it was the product of a tortured and overborne will. Psychological coercion as well as physical can be the basis of an involuntary confession. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). In all cases, the totality of the circumstances must be examined in order to determine the existence of coercion.

Griffin is semi-illiterate. He completed only the fifth grade in school. He can write but he cannot read very well. No intelligence tests have been performed on him, but viewing his actions and his history this court can only conclude that he does not have a very high intelligence. Although petitioner at the time was only twenty-one years old he had been in trouble before in North Carolina. He had served time in the penitentiary and therefore, he had necessarily had prior contact with the police, knew something of the nature of criminal proceedings and was familiar with the consequences which could result. In light of this background, the court must now turn to examine the influences operating upon petitioner's mind.

Arrested in Henry County and taken to the Sheriff's Office, he knew that he was in trouble. However, he was not interrogated. At that time he was merely being held until the arrival of the Patrick County authorities. Then, after having been advised that he could remain silent, he was questioned with respect to the Patrick County offenses. We assume *arguendo* that on the way back to Patrick County petitioner was told that he could get twenty years for the offenses in which his comrades had implicated him, and that it would be better for him if he confessed. Petitioner, of course, undoubtedly suspected, since he had no way of knowing differently, that the others had at that time implicated him in all of the crimes including those committed in Henry County. Still, however, he did not admit involvement. In fact, it was not until after he had reached Patrick County and had ben confronted with

the confession, quite properly obtained, of Clinton Fogelman that he thought he had better confess. Then only minutes later and less than twelve hours after having been taken into custody, he admitted his participation.

Since this confession and the statement subsequently signed for the Henry County authorities were inextricably bound up with one another in the petitioner's mind in the sense that after the first confession he must have felt there was nothing he could do but execute the second, in this court's opinion they must stand or fall together.

■ Looking now once again to the initial confession, this court believes that petitioner's election to join in and sign Fogelman's statement was the product of a rational choice which took into account several factors. First, until he actually was confronted with Fogelman's statement he may have doubted the stories of the Patrick County authorities and felt that he probably was still safe in that Fogelman and East probably had said nothing. Confronted with Fogelman's statement, he undoubtedly realized rationally that there was nothing else he could do. While no promises had been made to him, he had undoubtedly received the impression that things might go better for him if he told the truth. Knowing that he could get twenty years undoubtedly was a factor in his decision.

■ This court can see here no insidious efforts to change petitioner's mind by duress. Cf. Ledbetter v. Warden, 368 F.2d 490 (4th Cir. 1966). To hold otherwise would require this court to say that making an accused aware of the amount of time he could receive if convicted of the offenses which the Commonwealth believes he committed would be sufficient to constitute coercion. This court cannot adopt such a position.

Petitioner having failed to demonstrate that the points he raises entitle him to relief, it is adjudged and ordered that his petition be and the same hereby is dismissed and that the writ is denied.