# Richmond

## James Clyde Burton v. C. C. Peyton, Superintendent of the Virginia State Penitentiary.

January 19, 1970.

Record No. 7048.

Present, All the Justices.

*William A. Young, Jr.* (*Wallerstein, Goode, Dobbins & Shuford*, on brief), for plaintiff in error.

*Edward J. White, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

James Clyde Burton is before us on a writ of error to a judgment of the court below denying his petition for a writ of habeas corpus

following a plenary hearing on November 20, 1967. Petitioner attacks a judgment imposed upon him on July 19, 1962, wherein he was sentenced to life imprisonment for the murder of Thomas Joe Howell.

On Sunday, November 5, 1961, about 6:30 P.M., Howell was killed by an assailant, then unknown, while in his automobile at an abandoned ball park in Halifax County.

On April 18, 1962, Burton shot and wounded two deputies from the sheriff's office of Halifax County as they attempted to serve a warrant on him sworn out by his wife following a domestic quarrel. Petitioner remained at large for three days before surrendering to the sheriff.

At the time of the surrender he was not suspected of the murder of Howell. However, while investigating the attempted murders of the deputies, a similarity was noted between the tire prints of his automobile and prints, of which a cast had been made, of the tires of the vehicle believed to have been used by the perpetrator of the Howell murder. This similarity, together with the violence exhibited by petitioner when the officers attempted his arrest on a minor criminal charge, alerted the sheriff that he might be suspect.

Burton first agreed and then declined to take a polygraph test. After having been questioned on several occasions by the sheriff regarding the murder and following two conferences with the Commonwealth's Attorney of Halifax County, petitioner confessed to the murder of Howell. He advised the sheriff where he had hidden the pocketbook taken from the victim and the gun that he used.

A trial was had in the court below on July 19, 1962, at which time petitioner, represented by counsel appointed May 12, 1962, entered a plea of guilty. At this trial approximately ten witnesses testified, including the wife, mother-in-law, the pastor and three relatives or friends of petitioner. The trial court found petitioner guilty of first degree murder and sentenced him to life imprisonment in the penitentiary. No appeal was noted.

Petitioner now complains that his confession to the sheriff was obtained by coercion or promises on the part of the Commonwealth's Attorney and that he was denied his right to appeal.

With reference to the confession, Sheriff Coates testified that prior to any questioning about the murder he advised petitioner that he had a right to remain silent, and that any statement that he gave could be used in evidence against him.

Frank M. Slayton, Commonwealth's Attorney, testified that the day following Burton's arrest, he was advised by the sheriff that Burton desired to talk to him; that he went to the sheriff's office where he, Burton and the sheriff "just talked generally about the Court procedure involved when a person entered a guilty plea and the role played by the Commonwealth attorney"; and that he told petitioner that on a plea of guilty the Comonwealth's Attorney made a recommendation to the court, but that it was "entirely up to the Court to accept the recommendation or impose whatever punishment the Court felt was proper under the circumstances".

Two days later, the sheriff called the Commonwealth's Attorney and told him that Burton wanted to talk with him again. Slayton testified that they met at the sheriff's office and Burton asked him what recommendation he would make on a guilty plea by him of the murder of Howell. Slayton replied that he would "need to know more, would have to have more than just a statement from him", but that if he (Slayton) were satisfied, he would recommend life imprisonment. Petitioner thanked him, and following that conference, on the afternoon of the same day, Burton made his confession to the sheriff.

The Commonwealth's Attorney was certain that petitioner initiated both the meetings and the discussions as to the punishment which could result from a conviction of murder. He further said that petitioner questioned him repeatedly to be absolutely sure that the Commonwealth's Attorney would not ask for the death penalty. Slayton was also positive that he told petitioner that he did not know what the court would do because of the gravity of the offense; that the judge could give him the death penalty; but that he thought a death sentence unlikely and would urge the court to impose a life sentence.

The trial court found as a fact that petitioner instigated the conferences with the Commonwealth's Attorney in an effort to determine for himself "what was in store for him should he decide to plead guilty or to confess to this crime of murder"; that there was no coercion of petitioner; that no promises or inducements were made to secure the confession; and that the confession was made to the sheriff voluntarily, after petitioner had elicited enough information from the officers to satisfy himself that a plea of guilty would not likely result in the death penalty.

At the time of the confession, petitioner was not only suspected of the murder of Howell, but was being held on charges of the at-

tempted murder of two deputies, a charge of automobile theft, and another of assault on his wife. He knew the evidence that the sheriff's office already had, pointing to his murder of Howell, and that their investigation was continuing.

Petitioner made numerous statements during the course of the plenary hearing which were contradicted by other witnesses or shown to have beeen untrue. He claimed that the confession was elicited after several weeks of questioning. The evidence shows that the confession was signed four days after his voluntary surrender. He denied recalling why he entered a plea of guilty and claimed that he "never had anything to say to my attorney". His attorney stated that petitioner's decision to plead guilty was made well in advance of trial, and that he "fully agreed and understood that and seemed to be quite satisfied that we worked it out".

The record shows that at no time during the hearing did petitioner allege his innocence and that his complaint now is that he "received too much time". He claims that he never spoke to his attorney with regard to the sentence he might receive. His attorney testified that they went into the subject thoroughly, and that petitioner displayed great interest in that question since the death penalty was involved.

The trial court, faced with the contradictions in the testimony of petitioner and the positive and unequivocal testimony of the sheriff and Commonwealth's Attorney, was fully justified in holding that the confession was voluntary and not coerced or induced by any promises made petitioner.

Nowhere is it denied that petitioner was advised by both his own attorney and the Commonwealth's Attorney that first degree murder is a capital crime. It was certainly the duty of his own attorney to so advise petitioner, *Brown* v. *Smyth*, 271 F. 2d 227 (4th Cir. 1959). It was also the duty of the Commonwealth's Attorney to deal fairly with petitioner. Most certainly he could answer petitioner's inquiry regarding the degrees of murder, the punishment that could be imposed and what his recommendation would be.

Burton was faced with a trial for murder and the possible death penalty. His attorney would have been remiss had he not warned petitioner of the risks attendant upon standing trial for a capital offense. *Moore* v. *Wainwright*, 401 F. 2d 525 (5th Cir. 1968). The possibility of a death sentence exists in every prosecution for first degree murder in Virginia. The mere act by the Commonwealth's

Attorney, and thereafter by his own counsel, of advising petitioner of a possible death penalty did not constitute coercion.

In *Griffin* v. *Peyton*, 284 F. Supp. 650 (W.D. Va. 1968), a defendant, who was informed by the Commonwealth's Attorney that "I guess you know I could get you 20 years out of this", claimed that this constituted coercion and induced his confession. The court refused to adopt such a position and dismissed the petition, observing:

> "To hold otherwise would require this court to say that making an accused aware of the amount of time he could receive if convicted of the offenses which the Commonwealth believes he committed would be sufficient to constitute coercion. This court cannot adopt such a position." 284 F. Supp. 650, 654.

In the instant case, the evidence shows that petitioner was the moving force in the discussions had with the Commonwealth's Attorney and that it was he who sought to discover what he might receive if he confessed and entered a plea of guilty. He was told exactly what the law provides upon a plea of guilty and was alerted to the fact that the ultimate decision was a matter solely within the discretion of the trial judge. Petitioner was advised that if the facts justified it, the Commonwealth's Attorney would recommend life imprisonment if he confessed and entered a guilty plea. However, he was also advised that the recommendation might or might not be accepted by the court.

W. M. Lewis, court-appointed attorney for petitioner, is described by the trial court as an attorney of maturity, with a considerable criminal practice. Lewis discussed the case with petitioner four or five times prior to trial. He said that petitioner never complained about his confession given the sheriff, and fully understood the advice his attorney was giving him.

Lewis concluded from the circumstances and evidence of the case, and from the fact that Burton had acknowledged the crime, that if he could keep him from getting the electric chair it was quite a victory. He stated that petitioner arrived at the decision to plead guilty after he had explained to him his right to a jury trial, the likelihood of his conviction and that there was no assurance whatsoever of what a jury would do.

Petitioner's counsel was asked if Burton requested him to appeal the conviction. He replied: "No, sir, he and I both were highly

gratified in my opinion that the Court did what it did." He testified that petitioner never indicated to him any desire to appeal, or any dissatisfaction with the judge's decision. Lewis doubted that he advised petitioner of his right to appeal after sentence had been passed, for Burton had entered a plea of guilty, and he thought petitioner "would have been very reluctant to request an appeal at that time". He said that he would have undertaken an appeal had he been requested to do so.

We are not confronted here with the same situation that existed in *Boykin* v. *Alabama*, 395 U. S. 238, 89 S. Ct. 1709, 23 L. ed. 2d 274 (1969). That was a direct appeal from a death sentence by a state court affirmed by the Supreme Court of Alabama. It was reversed for the reason that the record in the case did not show that the accused fully understood what a plea of guilty connotes and its consequences.

In the instant case, there now has been a full and complete hearing. The trial court found as a fact that petitioner had effective representation, fully understood his right to a trial by jury, and fully understood the effect of his plea of guilty. The evidence amply supports a finding that the plea of guilty was made knowingly and intelligently by petitioner, with full knowledge of its effect and that he was assisted by competent counsel. From such a plea there is no appeal. *Peyton* v. *King*, 210 Va. 194, 169 S. E. 2d 569 (1969).

The judgment of the trial court dismissing the petition of James Clyde Burton for a writ of habeas corpus is

*Affirmed.*