Raymond Lee MUSE, Petitioner,

v.

A. E. SLAYTON, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 71–C–105–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Oct. 15, 1971.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

Raymond Lee Muse, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. The petition was originally filed in the United States District Court for the Eastern District of Virginia and, by order dated August 25, 1971, was transferred to this court. Leave to proceed *in forma pauperis* has been previously granted.

Petitioner is presently serving concurrent life sentences in the Virginia State Penitentiary pursuant to a judgment of the Hustings Court of the City of Roanoke, imposed on March 4, 1968, for two counts of rape. At his trial, petitioner represented by court-appointed counsel, entered a plea of guilty to the charges and was tried and convicted by the court without a jury. Petitioner did not appeal from the conviction, but subsequently sought relief by writ of habeas corpus in the Hustings Court on the same grounds presented here. After a plenary hearing, the state court denied the writ, and that judgment was affirmed on appeal by the Virginia Supreme Court of Appeals. Having presented his claims to the state's highest court, petitioner has exhausted his available state remedies in compliance with the provisions of 28 U.S.C. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

In this petition, petitioner seeks relief upon the following grounds:

1. He was entitled to a hearing in the Hustings Court on all of the allegations in the petition filed therein.

2. The plea of guilty was involuntary.

3. The pre-indictment lineup violated due process.

4. The order of the Juvenile and Domestic Relations Court of Roanoke certifying petitioner to the grand jury was improper.

5. The pre-hearing investigation in the Juvenile Court was insufficient.

6. No *guardian ad litem* was appointed to represent petitioner at the Juvenile Court hearing.

7. The Juvenile Court failed to order a psychiatric inquiry.

8. The pre-hearing investigation for the Hustings Court was insufficient.

All facts necessary for this court to rule in this case were disclosed in the plenary hearing before the Hustings Court or have been developed in other parts of the record. Therefore, it is not necessary to hold a hearing to determine any additional facts. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Correspondingly, the state habeas corpus court did not err in refusing to expand the hearing beyond its actual scope.

Petitioner alleges that the guilty plea was induced by promises of a lighter sentence. The trial court conducted a searching inquiry to determine whether

petitioner understood his rights and the nature and consequences of his plea. In response to the court's questions, petitioner stated: that he and his attorney had discussed the case; that he knew he had a right to plead not guilty and to be tried by a jury; that he understood that on the plea a sentence of death or life imprisonment could be imposed; and that his plea was not coerced nor induced by threats, promises or rewards made by anyone. Prior to sentencing, petitioner also stated that he was satisfied with counsel's representation of him. The order of conviction recited that the plea of guilty was entered with the advice of counsel and the court opined that petitioner understood the nature and effect of the plea.          .

Petitioner claimed at the state habeas corpus hearing that his counsel promised him that a sentence of only twenty-five years would be imposed if he pleaded guilty to the charges. His trial counsel testified that, based on petitioner's written confession and other written statements to counsel, and counsel's discussions with the police and with the petitioner, he advised the petitioner to plead guilty. One of petitioner's co-felons had previously been convicted and had received a sentence of life imprisonment; since petitioner was more involved in the crime, counsel determined that the petitioner would incur a serious risk of the death penalty by failing to plead guilty. Had it not been for the result in the prior trial, counsel opined that a sentence as low as thirty-five years rather than life may otherwise have been imposed after a guilty plea. There was no mention in the discussions with petitioner of a sentence of twenty-five years in any case. The only promise made was that if petitioner pleaded guilty and testified at the subsequent trial of a co-felon, the commonwealth attorney would neither recommend nor request a specific sentence. The record shows that the commonwealth attorney did not ask for a specific sentence but urged the court, before passing sentence, to consider petitioner's willing and valu-

able help to the prosecution in securing a conviction against his co-felon.

We find no merit in petitioner's claim. A guilty plea is not rendered involuntary because it is entered on the considered advice of counsel. Schnautz v. Beto, 416 F.2d 214 (5th Cir. 1969); St. Clair v. Cox, 312 F.Supp. 168 (W.D. Va.1970). The mere allegation that his attorney suggested to petitioner that if he stood trial he was in jeopardy of a death sentence does not constitute such coercion as to make the plea of guilty an involuntary act. Brown v. Smyth, 271 F.2d 227 (4th Cir. 1959) (and cases cited therein); Burton v. Peyton, 210 Va. 484, 171 S.E.2d 822 (1970). Upon the record, we think that counsel's testimony, that no promise of a specific sentence of twenty-five years was made to the petitioner by counsel nor by anyone else, is credible. If petitioner actually believed that the court would impose only a twenty-five year sentence, that belief must be viewed solely as a product of his own mind. It is clear moreover that the commonwealth attorney did uphold his promise not to request a specific sentence. The plea is not rendered involuntarily by a promise actually kept.

Petitioner also alleges however that the pre-indictment lineup, at which the victims identified him and his co-felons, was illegal; it is unclear however what effect this had on the guilty plea since nowhere is such a claim alleged. The lineup identification was not introduced at the subsequent trial. The record reveals that an attorney had been appointed to represent all four co-felons at the lineup, but that shortly thereafter another attorney was appointed to represent petitioner solely. Apparently due to illness, that attorney was excused and still another attorney was appointed to represent petitioner. Petitioner had informed his prior counsel of the lineup identification but had not so informed trial counsel. The trial counsel testified at the habeas corpus hearing that he was not aware of the lineup apparently until after the trial. He stated further

that he did not contact the prior counsel because after he had requested and received from petitioner the latter's own written version of the crime, he was convinced of petitioner's guilt by petitioner's own admissions to him. Counsel's advice to the petitioner to plead guilty, based on the written confession to the police, petitioner's own statement and discussions with him, and counsel's independent investigation of the circumstances, was not induced by the lineup identification. If petitioner entertained pre-trial doubts as to the lineup's procedural fairness, we do not think an even improper assessment of the admissibility of identification, in light of the other evidence against him, would be sufficient to render the plea involuntary. Cf. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■■ Petitioner has alleged no other inducements or intimidations to support his allegations; nor does he suggest that he had any real defense to present. We find therefore that the plea of guilty was entered voluntarily. So determined, the plea is an admission of guilt and constitutes a waiver of all non-jurisdictional defects. Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967); Love v. Cox, 312 F.Supp. 223 (W.D.Va.1970). The guilty plea forecloses subsequent collateral attack upon the judgment and the sentence when the attack is upon an alleged deprivation at a prior stage in the proceedings. White v. Pepersack, 352 F.2d 470 (4th Cir. 1965); St. Clair v. Cox, *supra.* Since several of petitioner's remaining claims attack jurisdiction, they are not waived. Moreover, there is no suggestion in the recent decision in McMann v. Richardson, *supra* that a plea of guilty precludes collateral attack on those claims. All of petitioner's remaining claims arise from alleged irregularities in the certification procedure of the juvenile court.

Because petitioner was seventeen years old at the time of his arrest, he was brought before the judge of the Juvenile and Domestic Relations Courts of Roanoke, to determine whether he should be tried as an adult. Code § 16.-1–176; 16.1–176.1 After hearing the evidence of the complaining witnesses, the judge ordered, on separate warrants, that petitioner " * * * is found guilty of rape as charged * * * and it is adjudged that he be adjudicated an adult and held for the Hustings Court Grand Jury."

■ Petitioner claims that the judge had no jurisdiction to find him "guilty" and to certify him to the grand jury on such a finding. The purpose of the certification hearing is to determine whether probable cause exists to believe the petitioner committed the crime charged, and to determine whether he comes within the purview of juvenile law. A juvenile hearing is in this regard comparable to a preliminary hearing which would be given to an adult. The words "guilty as charged" did not deprive the petitioner of any right, nor did they in any way affect the later proceedings, nor do they constitute a jurisdictional defect in the certification hearing. We therefore find no merit in this claim.

■ Petitioner also claims that the pre-hearing investigation report is incomplete and therefore a violation of due process and equal protection of the law because it did not meet the requirements of Code § 16.1–176(b). *See e. g.* Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966). The certification hearing was conducted on October 20, 1967; the juvenile court judge had before him the pre-hearing investigation report, dated October 17, 1966. There is no allegation that the report, at least until the earlier date, was incomplete. There is no suggestion moreover that petitioner's condition had materially changed since the preparation of the report. Had there been such change, petitioner had ample opportunity to so inform the court. Code § 16.1–176(b) provides that a probation report shall be prepared "unless such information is otherwise available to it from a prior investigation and report to another court." *A fortiori,* the juvenile court could rely on information previously supplied to itself in a subse-

quent case, involving the same defendant. Redmon v. Peyton, 420 F.2d 822 (4th Cir. 1968). We think therefore that the requirements of due process and of the Virginia statute were met. The only significant change in his status was his marriage, of which the court had already been informed.

Furthermore, certification in the instant case would have been governed by Code § 16.1–176.1, which provides that a juvenile sixteen years of age or over who had been previously committed to any juvenile training school shall be certified to the court of record if probable cause is found by the juvenile judge. Since petitioner had been previously committed to the State Board of Welfare and Institutions from November 15, 1965 until July 1, 1966, it would appear that any further probation report would have been unnecessary.

Petitioner further alleges that the necessary persons were not notified of the certification hearing, as required by Code § 16.1–172, nor in their absence was a *guardian ad litem* appointed to represent him, as required by Code § 16.1–173 (prior to 1968 amendment). See e. g. Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969); Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967).

The probation officer's report indicates that petitioner's mother and his court-appointed counsel were present at the hearing. Moreover, the order of the juvenile court recites that petitioner was accompanied by his parent at the hearing. Petitioner apparently argues that since his mother had been deprived of petitioner's custody in 1960, she was not a proper person under either statute; moreover, since counsel was not appointed *guardian ad litem,* the requirements of Code § 16.1–173 were not met. At the request of the Roanoke Department of Public Welfare, which had obtained custody from the mother in 1960, the judge of the Juvenile and Domestic Relations Court of Roanoke ordered on June 20, 1967, that the Department be relieved of petitioner's custody. Since

no other person or agency was granted custody over the petitioner, custody inured to the petitioner's mother. Therefore at the hearing four months after the order, petitioner's mother was a proper person under Code § 16.1–172.

Petitioner further alleges that the failure of the juvenile court judge to order a psychiatric examination as an adjunct to the pre-hearing investigation constituted a denial of due process of law. This claim is equally without merit. Code § 16.1–176(b) provides that "(s)uch (pre-hearing) investigation need not include an examination of the child or minor by a physician or psychiatrist unless the court, in its discretion, so directs." There is no evidence that petitioner suffered from any mental disability, nor that he requested and was refused a psychiatric examination. We find nothing to indicate that the juvenile court judge abused his discretion in failing to order an examination. See Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368 (1955).

The final claim is that the pre-hearing report certified to the Hustings Court by the Juvenile Court pursuant to Code § 16.1–176(b) presented an insufficient basis by which the Hustings Court could ensure that the petitioner was properly treated as an adult, just as the report could not form a proper basis for the juvenile court to make a similar determination. It has previously been found that the pre-hearing report was adequate for the juvenile court. For the same reasons, it was adequate for the Hustings Court. Code § 16.1–176(b) provided that "if an investigation and report has been made by the juvenile court and the results thereof certified to a court of record, the latter need not order such investigation." *See* Redmon v. Peyton, *supra.*

For the foregoing reasons, it is ordered that the petition for a writ of habeas corpus be dismissed with prejudice and the relief denied.

If the petitioner desires to appeal this judgment or any part thereof, he should

file with the clerk of *this* court within thirty (30) days a notice of appeal. Failure to file a notice of appeal within thirty (30) days may result in a denial of the right to appeal. The notice of appeal shall state the following:

1. the judgment, order, or part thereof appealed from;

2. the party or parties taking the appeal; and

3. the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.