# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Commonwealth of Virginia

v.

Jeffrey Allen Middleton

April 25, 1988

Case No. (Criminal) CR87-2589

By JUDGE JOHN K. MOORE

The defendant, Jeffrey Allen Middleton, has been indicted for the murder of Sharon Disney, and the case is now before the Court on a motion to suppress defendant's confession. The defendant contends that his confession was coerced by reason of promises and threats made by the Commonwealth's Attorney and the police.

The facts in this case may be summarized as follows. Sharon Disney was murdered on April 12, 1986, in the City of Virginia Beach, and the crime remained unsolved until suspicion focused on the defendant after he was charged with the rape, robbery, and abduction of Shelley Drumheller on September 10, 1986, and the rape and abduction of Bonnie Duke on October 2, 1986. Defendant was convicted on those charges, and on June 10, 1987, was sentenced to serve eighty-five years in the Virginia State Penitentiary. Following that conviction, defendant was transferred from the Virginia Beach Jail to the State Department of Corrections and placed in the Augusta Correctional Center.

The police continued to believe that the defendant was involved in the Disney murder and decided to interview him again in prison. Because the defendant had previously denied any involvement in the Disney murder, the police felt that they had to offer him something in return for a confession. They approached the Commonwealth's Attorney with the idea of offering the defendant a specific plea

agreement in return for his confession and a plea of guilty to second degree murder. On October 27, 1987, Mr. Albert D. Alberi, Assistant Commonwealth's Attorney, wrote a letter addressed to the defendant in which he advised the defendant that if he would talk to the Virginia Beach Police and plead guilty to second degree murder, he would recommend that he be sentenced to serve twenty years in the Virginia State Penitentiary and that ten years of that sentence be suspended for a period of ten years after his release. The letter went on to say that "this will add an additional ten years to the sentence you are already serving." In addition, the letter further advised the defendant that if he declined to accept the plea offer and should enough evidence be accumulated to charge him with capital murder then, "there remains the possibility of death sentence."

On November 19, 1987, Detectives Dunn and Chrisman went to the Augusta Correctional Center and interviewed the defendant. The defendant was acquainted with Detective Dunn, and after they told him why they were there and exchanged pleasantries, Detective Dunn introduced the defendant to Detective Chrisman. Detective Chrisman advised the defendant of his Miranda rights, and defendant executed a written legal rights waiver form indicating that he understood his rights and was willing to talk to them. Detective Chrisman then asked the defendant to tell them everything that he knew about the case. The defendant did not respond for four or five seconds. Detective chrisman then handed him the plea offer and asked him to read it. After the defendant read the plea offer to himself, the Detectives explained it to him verbally. The defendant indicated that he wanted to talk to Mr. Alberi to determine what kind of person he was. A telephone call was arranged, and the defendant spoke to Mr. Alberi for three or four minutes during which the offer was again explained to him, and he was told that, "it would add another ten years to his sentence." After talking to Mr. Alberi, the defendant returned to the interview room and told the Detectives that he would sign the plea offer. The defendant signed five or six copies of the plea offer, a copy of which has been introduced into evidence. For the next hour, the defendant proceeded to answer questions asked by the Detectives concerning his involvement in the Disney murder.

This is the first statement the Defendant seeks to suppress.

Subsequently, on December 7, 1987, the defendant was indicted for the second degree murder of Sharon Disney. On February 9, 1988, Detective Sandra Baum of the Virginia Beach Police Department served a capias and copy of the indictment on defendant at the Detective Bureau and took him to the Magistrate's office where she gave a brief recitation of the facts in the case, including the fact that the victim had been stabbed three times while she was leaving her boyfriend's residence. At that point the defendant responded, "I only stabbed her once." The defendant also seeks to suppress this statement on the grounds that it is tainted by his illegal first statement.

Specifically, defendant contends that the statement he gave to the detectives on November 19, 1987, at the Augusta Correctional Center was the product of coercion as a result of promises and threats made by the Commonwealth and alleges as follows:

1. The Commonwealth's Attorney and the detectives falsely promised defendant in a written plea offer and their verbal representations that if he confessed and pled guilty to second degree murder, they would recommend that he be sentenced to twenty years in the Virginia State Penitentiary with ten years suspended and that this sentence would *add an additional ten years to the sentence he was already serving.*

2. The Commonwealth's Attorney threatened the defendant that if he declined to accept the plea offer, there was a distinct possibility that enough evidence would be discovered to charge him with capital murder with the possibility of the death sentence.

3. The Commonwealth's Attorney engaged in illegal plea bargaining with the defendant in violation of his constitutional right to counsel and the rules of the Supreme Court of Virginia.

The Commonwealth has the burden of proving by a preponderance of the evidence that a defendant's statements

are voluntary. *Rodgers v. Commonwealth*, 227 Va. 605 (1984). Admissibility is an issue for the court and not the jury, and the trial court must determine from all the evidence on the subject, including that of the accused as well as that of the prosecution, whether the confession was freely and voluntarily made. *Washington v. Commonwealth*, 214 Va. 737 (1974). The test to be applied in determining voluntariness is, in light of the totality of the circumstances, whether the statement is the product of an essentially free and unconstrained choice by the maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

The Commonwealth contends that the defendant's statement was voluntary after being properly advised of his Miranda rights and knowingly, intelligently, and voluntarily waiving those rights.

In support of their position that he was not coerced into confessing, they cite *Griffin v. Peyton*, 284 F. Supp. 650 (W.D. Va. 1968), and *Burton v. Peyton*, 210 Va. 484, 171 S.E.2d 822 (1970).

In *Griffin*, a defendant, who was informed by the Commonwealth's Attorney that "I guess you know I could get you twenty years out of it," claimed that this constituted coercion and induced his confession. The court refused to adopt such a position and held that on the fact of that case, making an accused aware of the offenses which the Commonwealth believed he committed was insufficient to constitute coercion.

In *Burton*, a defendant who instigated two conversations with the Commonwealth's Attorney for the purpose of discovering what he might receive if he confessed and entered a plea of guilty to murder and whether the Commonwealth's Attorney would ask for the death penalty, claimed that his subsequent confession was obtained by coercion or promises on the part of the Commonwealth's Attorney. The Supreme Court of Virginia affirmed defendant's conviction finding that the defendant was the moving force behind the discussions with the Commonwealth's Attorney, and he was told exactly what the law provides upon a plea of guilty, that if the facts justified it, the Commonwealth's Attorney would recommend life imprisonment but that the ultimate decision was for the court in its discre-

tion, and the plea might or might not be accepted by the court. The court held that the Commonwealth's Attorney could properly answer accused's inquiry concerning degrees of murder, punishment that could be imposed, and what his recommendation would be if accused pleaded guilty and that the mere act of advising accused of possible death penalty if he stood trial for first degree murder did not constitute "coercion" and did not render his plea of guilty invalid.

The court in *Burton* also held that the Commonwealth's Attorney has a duty to deal fairly with the accused with respect to obtaining a confession of murder and a plea of guilty. 210 Va. 484, at page 487.

The Commonwealth is correct in its assertion that the defendant knowingly and intelligently waived his Miranda rights and signed a written waiver form acknowledging that he understood his rights and indicating that he would talk to the detectives. There was no coercion involved in obtaining defendant's waiver. The coercion occurred after he signed the waiver and before he made any statement. The mere fact that defendant waived his rights does not mean that he will confess to a crime. He may very well deny it, as he did six months earlier when he was interviewed by Detective Dunn in the Virginia Beach jail, or he may choose to remain silent and not talk to the detectives, to talk only with counsel present or to discontinue talking at any time.

From the testimony of the detectives, it is clear that after defendant signed the legal rights waiver form and was asked by Detective Chrisman to tell him what he knew about the murder of Sharon Disney, the defendant just sat there and said nothing for four or five seconds. At that point Detective Chrisman handed defendant the written plea offer from the Commonwealth's Attorney. A telephone call was made to Mr. Alberi who, in response to the defendant's inquiry about the plea agreement, told the defendant that he would get exactly what the agreement said, twenty years with ten suspended as set out in his letter. Mr. Alberi testified that defendant never mentioned parole in their conversation, although defendant testified that he had a parole eligibility date of March, 1996, and asked Mr. Alberi if the plea agreement would mess his parole up, to which Mr. Alberi replied

that, "it would add another ten years to his sentence." Detective Dunn corroborates Mr. Alberi's statement that parole was not mentioned in the telephone conversation, but acknowledges, along with Detective Chrisman, that defendant calculated out loud that he would probably have to serve three or three and a half years of the ten year sentence. After speaking with Mr. Alberi, the defendant signed five or six copies of the plea offer indicating that he accepted it and gave the statement which is the subject of this Motion to Suppress.

The Commonwealth relies on the case of *Moran v. Burbine*, 106 S. Ct. 1135 (1986), for the proposition that the police do not have to supply a suspect with a flow of information to help him calibrate his self interest in deciding whether to speak or stand by his rights. In *Moran* the court held that the failure of police to inform defendant of telephone calls from an attorney, who had been retained by the defendant's sister without his knowledge, before continuing their interrogation of defendant did *not undermine the validity of defendant's waiver of his Miranda rights.*

The Commonwealth also cites the case of *Colorado v. Spring*, 479 U.S. ---, 93 L. Ed. 2d 954, 107 S. Ct. ---, (1987), which held that a defendant need not be aware of every possible subject of questioning in advance in order to waive his privilege against self-incrimination.

It is interesting to note that in *Colorado v. Spring*, *supra*, the court said, "The Court's aim in designing the Miranda warnings was to assure that the individual's right to choose between silence and speech remains unfettered *throughout the interrogation process.*" The court went on to say:

> The inquiry whether a waiver is coerced has two distinct dimensions. *Moran v. Burbine*, 475 U.S. [412], 89 L. Ed. 2d 410, 106 S. Ct. 1136 (1986):
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature

of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

When the detectives interrogated defendant at the Augusta Correctional Center, it was their purpose "to get a confession." The tragic murder of Sharon Disney had been unsolved for a year and a half. There were apparently no other suspects except the defendant. The police had no eye witnesses or physical evidence which could solve this crime. Without a confession, it would remain an "open book." The defendant was a primary suspect because of similarities between the Disney murder and the two rape charges defendant had been convicted of on June 10, 1987. Detective Chrisman admitted that he was so sure defendant had information about the crime that he sent him a copy of the reward poster while defendant was in prison. He also admitted to being afraid that if they did not promise him something, defendant would not talk to them.

From all of the evidence presented, it is clear that defendant statements were made only after receiving the promises and threats in the plea agreement.

They were not the product of a rational intellect and free will. Defendant testified that he was afraid if he did not accept the plea agreement, they would try to convict him of capital murder and give him the death penalty, and it was his understanding that he would only get ten more years added on to his sentence.

In reality, once defendant was convicted of second degree murder, he not only would have to serve the additional ten years, but he would no longer be eligible for parole in 1996 and would have to serve the full eighty-five years sentence he received on June 10, 1987.

Conceding for purposes of this decision that parole itself is never certain, parole eligibility is a reality and its loss would be devastating to defendant. To argue that defendant did not need to know of this possibility in order to execute a valid waiver of his Miranda rights

is to place form over substance and is contrary to the law and common sense.

In effect, what the defendant was offered was not what would happen if he pled guilty to murder. The Commonwealth's Attorney made defendant a promise he could not keep. He did not deal fairly with defendant, and he should have known that a murder conviction would make him ineligible for parole.

The threat to charge defendant with capital murder was also deceptive. It was made without any evidence to support it beyond sheer speculation and was, in the words of the Commonwealth's Attorney, a "bluff." The court can only conclude that it was made to induce the defendant into accepting the plea offer and confess.

This case is unique from the vast majority of cases dealing with the suppression of a confession because the court does not have to resolve the issue of credibility on the allegations of coercion. The alleged coercion consists of the promises and threats contained in the plea offer written by the Commonwealth's Attorney. They are uncontradicted.

Mr. Alberi, the Assistant Commonwealth's Attorney, acknowledges that, at the request of the police, he wrote the letter to defendant with the plea offer and the "veiled threat" to charge him with capital murder if he declined to accept the offer. The offer was again explained to defendant by Mr. Alberi in a telephone conversation on November 19, 1987. He also acknowledged that he knew the defendant was serving an eighty-five year sentence for two prior separate and distinct rape convictions but denies knowing that if defendant were convicted of second degree murder, it would make him ineligible for parole under the provisions of Sect. 53.1-151(B1). That section states that, "Any person convicted of three separate felony offenses of (i) murder, (ii) rape, or (iii) robbery by the presenting of firearms or other deadly weapon, or any combination of the offenses specified in subdivision (i), (ii), or (iii) when such offenses were not part of a common act transaction or scheme *shall not be eligible for parole*." Mr. Alberi, in fact, represented the Commonwealth at defendant's sentencing on the two rape charges on June 10, 1987.

It is difficult to understand how an Assistant Common-wealth's Attorney with ten years of experience who was previously involved in the prosecution of the defendant for two separate rape charges only a year before was not aware that a conviction of second degree murder would result in the defendant being ineligible for parole.

The defendant relies on the case of *Grades v. Boles*, 398 F.2d 409 (4th Cir. 1968), which held that a prosecutor's statement to defendant immediately before signing confession to the effect that in all probability defendant would be tried only on one case, and that his former convictions would not be pressed against him if he entered a plea of guilty, constituted a direct or implied promise, unconstitutionally inducing defendant to plead guilty, and admission of confession was a violation of defendant's privilege against self-incrimination.

Judge Sobeloff, writing for the court, cited *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1963);

> A confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by *any direct or implied promises, however slight*, nor by the exertion of any improper influence . . . .

(Emphasis added) *Bram v. United States*, 168 U.S. 532, 18 S. Ct. 183, 42 L. Ed. 568 (1897).

Judge Sobeloff also referred to the case of *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S. Ct. 448, 9 L. Ed. 2d 357 (1963), in which Justice Harlan observed:

> Evidence induced from a person under a governmental promise of immunity . . . must be excluded because of the constitutional privilege against self-incrimination. "Evidence so procured," he continued, "can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion."

In *Grades*, the Court also condemned as unacceptable the de facto plea bargaining which took place between the prosecutor and defendant. The court said:

> In effect, what the State here seeks to condone is a species of plea bargaining *shorn* of any of the essential safeguards mandated for true plea bargaining.
>
> The conditions under which this de facto plea bargaining took place are wholly unacceptable. Crucial here is the fact that Grades was not represented by counsel in his confrontation with the prosecutor.
>
> Counsel, or effective waiver thereof, is the sine qua non of permissible plea bargaining.

This court is of the opinion that those observations are equally applicable to this case. The conduct of the Commonwealth's Attorney in negotiating a plea agreement with the defendant was contrary to the provisions of Rule 3A:8, Rules of Virginia Supreme Court, regarding plea agreement procedure and was inherently unfair.

The court finds from all the circumstances that the statements made to the defendant in the plea offer were false and deceptive and constituted a deliberate and reckless withholding of information which deprived the defendant of the knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.

The Commonwealth has failed to meet its burden of proving that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel and that his statement was voluntary.

The defendant's statement must be suppressed.

The defendant also contends that the statement he made to Detective Baum at the Magistrate's office on February 9, 1988, was involuntary and inadmissible because the same influences which caused him to make the original statement continued to exist.

According to the evidence, Detective Baum picked the defendant up at the jail and took him to the Detective Bureau where she served him with a capias and a copy of the indictment at 2100 hours on February 9, 1988. She

then took defendant to the Magistrate's office for a bond hearing and gave the magistrate a brief recitation of the facts in the case which she had learned from Detective Chrisman, including the fact that the murder victim had been stabbed three times while leaving her boyfriend's residence. At that point, according to Detective Baum, the defendant said, "I only stabbed her once." The defendant was not being questioned at the time and nothing else was said about the offense. The rest of the conversation dealt with bond matters. The defendant denied making the statement as recited by Detective Baum. Instead, he alleged that he was only stating what he understood the facts to have been.

In either event, the defendant claims that this statement is tainted by the prior involuntary statement and is, to use the Supreme Court's metaphor, the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338 (1939); *Wong Sun v. United States*, 371 U.S. 471 (1963).

The Supreme Court of Virginia echoed this doctrine in the case of *Bunting v. Commonwealth*, 208 Va. 309 (1967), stating:

> A confession obtained by such methods as to make it involuntary renders subsequent confessions made while an accused is under the operation of the same influences also involuntary and inadmissible in evidence. Once a confession is obtained under improper influences, the presumption arises that a subsequent confession of the same crime flows from the same influences. This presumption, however, is not a conclusive one and may be overcome by clear and substantial proof that a second confession was made when the mind of the accused was free from the influence which induced the initial confession. *Matthews v. Commonwealth*, 207 Va. 915, 920, 921, 153 S.E.2d 238, 241 (1967); *Thompson v. Commonwealth*, 61 Va. (20 Gratt.) 724, 730 (1870); 29 Am. Jur. 2d, Evidence, Sec. 537, pp. 588-589; Underhill's Criminal Evidence, 4th ed. Sec. 266, p. 521.

Among the factors which the court may consider in determining whether or not the influences which induced the first confession have been attenuated or dissipated are the passage of time or the occurrence of intervening circumstances.

With the exception of the passage of almost twelve weeks since the first confession, the Commonwealth has introduced no evidence to overcome the presumption that the influences which induced the original confession continued to influence the defendant at the time of the statement he is alleged to have made to Detective Baum. Those influences included the promise contained in the plea agreement that in return for his confession and plea of guilty to second degree murder, he would only get ten more years on his sentence and the threat that if he failed to accept the plea offer, there was a "distinct possibility" that enough evidence would be discovered to charge him with capital murder with the possibility of the death sentence. The defendant did not learn of the possible loss of his parole eligibility until he was advised of it by Mr. Legler, the public defender appointed to represent him, at a court hearing before Judge Whitehurst. Clearly, the plea agreement was still in effect in the defendant's mind at the time he made the statement to Detective Baum.

Accordingly, the court finds that the statement made to Detective Baum on February 9, 1988, was involuntary on the grounds that it was made while the defendant was under the operation of the same influences which rendered his prior confession involuntary, and the statement will be suppressed.