Albert W. GRADES, Appellant,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Appellee.

No. 11346.

United States Court of Appeals Fourth Circuit.

Argued May 8, 1968.

Decided July 8, 1968.

Graham C. Lilly, Charlottesville, Va., (Court-assigned counsel), for appellant.

Leo Catsonis, Asst. Atty. Gen. of West Virginia (C. Donald Robertson, Atty. Gen. of West Virginia, and Morton I. Taber, Asst. Atty. Gen. of West Virginia, on brief), for appellee.

Before SOBELOFF, BOREMAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

Albert Grades, currently serving a 99-year sentence in West Virginia for attempted armed robbery, seeks a writ of habeas corpus[1] on the ground that a written confession admitted against him at his trial was unconstitutionally induced. Finding the confession "voluntary," the District Court denied the petition. We reverse, holding as a matter of law that statements made to the petitioner by the prosecuting attorney immediately before the signing of the confession rendered its admission in evidence a violation of petitioner's privilege against self-incrimination.

The essential facts in this case are largely undisputed; only their legal significance is here debated. Arrested shortly after midnight for a crime other than the attempted robbery of which he was ultimately convicted, Grades was taken to the Huntington, West Virginia, police headquarters for interrogation. At no time was defendant advised of his right to an attorney,[2] nor was he represented by counsel during any of the subsequent events leading to his confession. In the early morning following his arrest, two police questioners spent three or four hours in an unsuccessful attempt to elicit from Grades a statement regarding the robbery. In the course of this examination, the police had the robbery victim, a 73-year old hotel proprietress, view the suspect as he sat alone in a police observation room. After fifteen or twenty minutes, she stated, "I think I know him." Although his assertion is denied by the police, petitioner testified that on the night of the arrest the interrogating officers assured him that if he "played ball with them and gave them a statement that they would help me out." Petitioner persisted in his refusal.

The next morning, when asked if he thought he would now like to make a statement, Grades responded, "I just don't know what to think." Still having signed no statement by late afternoon, Grades was taken by the two policemen to the office of the prosecuting attorney of Cabell County. At trial, one officer could offer no explanation for this visit. The other explained that Grades had three questions relating to other offenses which he wanted answered by the prosecuting attorney. Petitioner's

---

1. Petitioner has properly exhausted his available state remedies. 28 U.S.C. § 2254.

2. Although Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not applicable per se to this petitioner, his trial having been held in 1959, see Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the absence of counsel is a relevant factor to be considered here. See Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

version was that the trip was designed to confirm assurances by the police that if he cooperated he would be charged only with attempted robbery and that several other outstanding felony offenses would not be pressed.

Regardless of what motivated the confrontation between Grades and the prosecutor, their accounts of the ensuing colloquy are virtually identical. Grades asked three questions: 1. whether another robbery charge growing out of an incident in Harveytown could be held over to a later term of court; 2. whether several other charges would be dropped; and 3. whether he would be prosecuted under the habitual offender statute which carries a mandatory life sentence. The prosecutor, who testified that he was "pretty well incensed" over the attack on the hotel owner, responded that he would gladly continue the Harveytown robbery charge. As for the answers to the second and third questions, the prosecutor's own testimony says it best:

" * * * I informed him that it was not my policy to try a defendant on more than one felony case and *as the matter stood at that time, he would be tried only on one case.* * * * [A]nd he asked me whether or not I would put a habitual criminal—former convictions against him, and I don't recall my exact answer to that, but I am positive that what I told him was, in view of the offense and the penalty connected therewith, I would *in all probability not press the former convictions against him.* * * * I told him that *in all probability, he would not be tried,* if he were tried or entered a plea of guilty [on this robbery charge], *he would not be tried on any other indictment.* It has never been my policy to try a felon on two felony charges." (Emphasis added.)

Immediately following this response, while still in an office of the prosecutor, Grades signed a six-page written confession which had been prepared in advance by one of the policemen.

The District Court was manifestly correct when it found that "[t]here can be little doubt that the prosecutor's promise of leniency was an important consideration in Grades' decision to make the confession." The court erred, however, when *it applied a standard derived from the dissenting opinion in Miranda v. State of Arizona, 384 U.S. 436, 507, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),* and held that the prosecutor's promise did not amount to "unfair pressure." [3]

In Malloy v. Hogan, 378 U.S. 1, 7, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the Supreme Court ruled that the admissibility of a confession in state criminal trials is tested by the same standard that has been applicable to federal prosecutions since 1897 when the Court said:

"[A] confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by *any direct or implied promises, however slight,* nor by the exertion of any improper influence * *." (Emphasis added.) Bram v. United States, 168 U.S. 532, 542–543, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897).

This is the standard which must be applied in the instant case. As Mr. Justice Harlan observed writing for the majority in Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963), evidence "induced from a person under a governmental promise of immunity * * * must be excluded" because of the constitutional privilege against self-incrimination. "Evidence so procured," he continued, "can no more be regarded as

---

3. In tracing a line of cases involving physical and/or psychological coercion, Mr. Justice Harlan, for the minority, concluded: "The outcome was a continuing reevaluation on the facts of each case of *how much* pressure on the suspect was

permissible." He made no reference to *the inducement cases.* As to these, compare his statement in Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963), quoted infra.

the product of a free act of the accused than that obtained by official physical or psychological coercion."

The State's main contention is that the prosecutor's comments must be construed as an abstract declaration of policy and not a promise directed to this particular defendant. Alternately, the State suggests, as did the District Court, that even if the prosecutor made a promise, it had only an attenuated causal connection with the confession. We reject both propositions.

The State's characterization of the prosecutor's words is untenable. The perspective from which the statements must be viewed is that of the defendant, not the prosecutor's. As Judge Weinstein has recently stated when dealing with the analogous area of guilty pleas, "If, at the time he pled guilty, the defendant believed that a coercive promise or threat had been made by either the court or the prosecutor, though in fact no such promise or threat had been made, and his plea was induced by this belief, it is an involuntary and void plea." United States ex rel. Thurmond v. Mancusi, 275 F.Supp. 508, 516 (E.D. N.Y.1967). Similarly, Judge Weinfeld held constitutionally inadmissible a confession induced by statements of a police officer which were "reasonably understood by petitioner as an assurance that in exchange for his statement as to the events * * * he would not be prosecuted for any crime arising therefrom." United States ex rel. Casserino v. Denno, 259 F.Supp. 784, 790 (S.D. N.Y.1966).

In the instant case, no matter how much the legally-trained prosecutor may have hedged his responses with words like "policy" or "in all probability," there is no gainsaying the fact that petitioner believed, as he testified at his trial and again at his habeas corpus hearing, "I was assured by the Prosecutor that all other charges would be dropped." Petitioner did not seek out the prosecutor for an abstract discussion on criminal procedure in Cabell County. He wanted to know how *he* would be affected by "cooperating" with the police or by failing to do so. Grades asked whether he would be tried as a recidivist if he were convicted on the attempted robbery charge, not whether it was the prosecutor's general policy to press for the mandatory life sentence against persons who are convicted repeatedly of felonies. To the petitioner's ears, the prosecutor's words could have meant only one thing: If he signed the statement, he would be punished for attempted robbery and nothing else.

Nor is there room for doubt that it was this understanding of immunity from prosecution for several other offenses, including the dreaded recidivist charge, that at least in part prompted Grades to sign the confession. Seventy years ago the Supreme Court recognized the inherent difficulty of calibrating the effect of an unconstitutional inducement, when it observed, " * * * the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." Bram v. United States, supra at 543, 18 S.Ct. at 187. However, in the instant case, our task is not as difficult as usual. It is uncontradicted that until he interviewed the prosecutor, Grades had doggedly withstood the persistent police efforts to persuade or cajole him into signing a confession. He had consistently resisted the psychological pressure of an early-morning interrogation, a one-on-one confrontation and apparent identification by the victim and alleged promises of aid by the police. Yet on hearing the prosecutor's "statement of policy," as the State prefers to term it, Grades abandoned his resolve and signed the incriminating statement. The District Court called the prosecutor's declaration "an important consideration" in Grades's decision to sign. While this would be sufficient under the Fifth and Fourteenth Amendments to invalidate the confession and resulting conviction, we think the characterization a palpable understatement. The prosecutor's words

were obviously *the* principal and determinative factor motivating Grades to sign the prepared confession.

In effect, what the State here seeks to condone is a species of plea bargaining shorn of any of the essential safeguards mandated for true plea bargaining. As the Fifth Circuit has correctly perceived, "In practice there is very little difference in certainty or result between the case in which the prosecution has secured a guilty plea and the case in which it comes to court armed with a full confession." Harris v. Beto, 367 F.2d 567, 568 (5 Cir., 1966). To gain the certainty of a conviction in this case, the State bargained away its right to prosecute Grades for other crimes. Incidentally, it may be noted that this was not a wholly magnanimous gesture since the prosecutor admitted while testifying, although not presumably during his conversation with Grades, that his proof was not very strong on the remaining substantive offenses.

The conditions under which this *de facto* plea bargaining took place are wholly unacceptable. Crucial here is the fact that Grades was not represented by counsel in his confrontation with the prosecutor. Indeed, he was not even informed that he had a right to counsel. As a result, he was not advised as to any defenses he might proffer in this or the other possible cases, the strength of the Government's evidence on any of the offenses laid to him, or the possible consequences of a guilty plea on this charge. Thus, most significantly, he was not apprised of the relevant parole eligibility statutes which might have seriously affected his decision.[4] Counsel, or effective waiver thereof, is a *sine qua non* of permissible plea bargaining. As the American Bar Association's Report on Guilty

Pleas provides: "A defendant should not be called upon to plead until he had had an opportunity to retain counsel, or if he is eligible for appointment of counsel, until counsel has been appointed or waived." ABA Project on Minimum Standards for Criminal Justice, Report on Standards Relating to Pleas of Guilty, § 1.3(a) (Tentative Draft, 1967).

In addition to being deprived of counsel, Grades, after spending the night in jail, was forced to "bargain" sixteen hours after his arrest while still in the custody of the two police officers who had been interrogating him for the major portion of that time and who had advised him to "think over" the advantages of confessing. This in no way approximates the fair opportunity for mature deliberative judgment which is a prerequisite to valid plea bargaining. See American Bar Association Report, supra, § 1.3(b). Lastly, two other important safeguards inherent in any permissible plea bargaining are necessarily absent when the prosecution seeks to assure conviction in advance of the pleading stage. Unlike confessions, guilty pleas are made in open court under the active supervision of the presiding judge,[5] and may in the discretion of the court be withdrawn without prejudice. See In Re State ex rel. Eplin, 132 W.Va. 610, 53 S.E.2d 614 (1949); see also Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). On the other hand, the force of a valid confession, once made, is irrevocable. Although a defendant may repudiate it, the impact on the jury is largely ineradicable.

For present purposes, the most important similarity is that, as in the case of a confession, "[a] guilty plea, if induced by promises or threats which de-

---

4. Petitioner would have been eligible for parole in fifteen years under a life sentence for recidivism, W.Va.Code Ann. § 62–12–13(4) (1966), whereas he does not become eligible under a 99-year sentence until he has served 33 years. W.Va. Code Ann. § 62–12–13(1) (1966). Of course, it is debatable whether such a harsh sentence for attempted armed robbery could have been foreseen by even the most percipient lawyer.

5. See W.Va.Code Ann. § 62–3–1a (1966). See also Bailey v. MacDougall, 392 F.2d 155 (4th Cir. 1968).

prive it of the character of a voluntary act, is void." Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962).

We hold that under the *Bram* doctrine, as reiterated recently by the Supreme Court in *Shotwell* and *Malloy*, the prosecutor's statements to this defendant must be regarded as a "direct or implied promise," unconstitutionally inducing and thus rendering inadmissible Grades's confession. See also Harris v. Beto, supra; U. S. ex rel. Everett v. Murphy, 329 F.2d 68 (2d Cir.), cert. denied, 377 U.S. 967, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964). Accordingly, the case is remanded for the issuance of a writ of habeas corpus with leave, however, to the District Court to stay the effect of the writ to enable the State to retry the petitioner if it is so advised.

Reversed and remanded.