**Richmond**

REGINALD THOMAS HARRISON

v.

COMMONWEALTH OF VIRGINIA

No. 0805-85

Decided October 7, 1986

COUNSEL

Gary R. Hershner (Hutchens & Associates, P.C., on brief), for appellant.

Donald R. Curry, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLE, J. — On June 5, 1985, in a jury trial, the appellant, Reginald Thomas Harrison, was convicted of robbery. In accordance with the verdict, he was sentenced to twenty years in the penitentiary. The issue on appeal is whether Harrison's confession to the police was voluntary and properly admitted in evidence. We affirm the judgment of the trial court.

On March 12, 1985, Harrison entered a Security Federal Savings and Loan office in downtown Richmond, handed the teller an envelope, and told her to "look inside." In the envelope she found a note which informed her that Harrison had a weapon and demanded that she give him money. The teller activated the bank camera and placed a "dye pack" in with money which she gave to him. Soon after Harrison left the bank, a witness who was leaving a nearby restaurant saw "red dye . . . or red smoke . . . in the air" and saw a man throw something in a trash can on Eighth Street. The witness kept the man in sight as he walked up Eighth Street and pointed him out to the police at Eighth and Grace Streets, where he was arrested. The dye pack and an envelope containing $4,520 were recovered from the trash can on Eighth Street. Harrison's fingerprint was positively identified on the inside of the glass door through which he had exited the bank.

Prior to trial Harrison moved to suppress any and all inculpatory statements, admissions, or comments, which he had given to the Richmond police. He contends that he was unable to understand the nature and scope of the offense with which he was charged, and that any statements made by him were in violation of his right to remain silent. He alleges that his rights pursuant to the United States Constitution and the Virginia Constitution were violated in that his statements were not voluntary. The suppression motion was overruled and the statements made to the police were admitted in evidence.

The evidence adduced at the suppression hearing shows that on March 12, 1985, following his arrest for the robbery, Harrison was interrogated by detectives of the Richmond Bureau of Police. Detective L. E. Stone, Jr. testified that he participated in the questioning, and that Harrison was a suspect in a total of eight separate bank robberies. After advising Harrison of his *Miranda* rights, Stone told Harrison that if he were "truthful and completely cooperative" the police would seek the Commonwealth's Attorney's assistance and "see if he couldn't prosecute [Harrison] on a certain number." The Commonwealth's Attorney approved an arrangement under which Harrison would be prosecuted on only three of the robberies and one firearm offense. Detective Stone testified that during the course of these negotiations, Harrison never asked for an attorney, and throughout the interview he was alert, cooperative, and appeared to know what he was doing.

Harrison testified that he gave the confession after the arrangement offered to him by Detective Stone was confirmed by the Commonwealth's Attorney. He further testified that the police had denied him an attorney despite his requests, and that his ability to act rationally was impaired at the time of his confession by cocaine which he had injected earlier in the day. On cross-examination, however, Harrison testified that he could remember most of the details of what occurred on March 12, 1985. The question of Harrison's reduced or impaired mental capacity at the time of the confession due to his cocaine abuse, and the question whether he was denied access to an attorney were disputed issues which the trial court resolved against Harrison, and are not before us on appeal.

Harrison argues that his confession was obtained after he was promised that he would be prosecuted on only three of eight suspected bank robberies and that this inducement of leniency made his confession involuntary and inadmissible. He relies upon *Jackson v. Commonwealth*, 116 Va. 1015, 81 S.E. 192 (1914), *Belcher v. Commonwealth*, 160 Va. 891, 168 S.E. 468 (1933), and *Grades v. Boles*, 398 F.2d 409 (4th Cir. 1968) to support his position.

In *Jackson*, an agent for the prosecutor gave food and other comforts to the accused, Jackson, in order to extract a confession from him. He told the accused that it would go easier on him and his soul would be cleansed if he confessed so that others charged with murder would not be sentenced to death. The accused then confessed his guilt. Jackson was tried and the confession was admitted in evidence. He was convicted and sentenced to death.[1] On appeal, the Supreme Court reversed and held the confession involuntary and inadmissible. The reasoning of the court was that the Commonwealth breached its implicit promise that Jackson would not receive the death penalty if he confessed to the crime.

In *Belcher*, the Commonwealth's Attorney so conducted his conversation with the accused and his brother, and so shaped his language as to raise in the mind of the accused the hope that if he told what he knew about the crime and testified on behalf of the Commonwealth against the others who were implicated, he would not be prosecuted. He then gave a confession. He was prosecuted by the Commonwealth, the confession was admitted in evidence, and he was convicted. The Supreme Court reversed and held the confession involuntary and inadmissible.

In *Grades*, the United States Court of Appeals for the Fourth Circuit reversed the conviction of a West Virginia prisoner who had been convicted of attempted robbery. 398 F.2d at 410. The court found that the accused's statements had been induced by the prosecutor's promise that if he signed a confession, he would not be prosecuted "for several other outstanding felony offenses" or as

---

[1] While the opinion in *Jackson* states only that Jackson "was indicted for the offense of murder, and . . . was found guilty," 116 Va. at 1016, 81 S.E. at 192, the brief filed by Jackson makes it clear that he was adjudged guilty of murder in the first degree and sentenced to death. *Records and Briefs*, Supreme Court of Appeals 1913-1914, Vol. 176, p. 374.

an habitual offender. 398 F.2d at 411-12. While the opinion in *Grades* does not state whether the prosecution honored its promise, a recent Fourth Circuit decision makes it clear that the promise in *Grades* was breached. *See United States v. Shears*, 762 F.2d 397, 402 n.5 (4th Cir. 1985) ("In Grades . . . [w]e also held that the defendant's reasonable perception that he had been promised that all charges on unrelated offenses would be dropped, a perceived promise that was not fulfilled, was the principal and determinative factor leading to his confession, which was therefore involuntary.").

In each of these three cases, *Jackson*, *Belcher*, and *Grades*, the prosecutor obtained a confession from the accused by virtue of a promise of leniency. In each case the prosecutor did not honor his promise. This was the critical factor which caused the courts to declare the confessions involuntary and inadmissible.

The cases relied upon by Harrison are distinguishable on other grounds. *Jackson* and *Belcher* were decided before *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Grades*, the court emphasized that the defendant "was not even informed that he had a right to counsel." 398 F.2d at 413. In the present case, Harrison was fully advised of his *Miranda* rights, and the trial judge implicitly rejected his claim that he requested but was denied counsel.

■■■ The Supreme Court has articulated the test to determine voluntariness:

The Due Process Clause does not mandate that the police forgo all questioning, or that they be given carte blanche to extract what they can from a suspect. "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Culombe v. Connecticut, supra*, at 602.

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all

the surrounding circumstances — both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, *e.g.*, *Haley v. Ohio*, 332 U.S. 596; his lack of education, *e.g.*, *Payne v. Arkansas*, 356 U.S. 560; or his low intelligence, *e.g.*, *Fikes v. Alabama*, 352 U.S. 191; the lack of any advice to the accused of his constitutional rights, *e.g.*, *Davis v. North Carolina*, 384 U.S. 737; the length of detention, *e.g.*, *Chambers v. Florida*, *supra*; the repeated and prolonged nature of the questioning, *e.g.*, *Ashcraft v. Tennessee*, 322 U.S. 143; and the use of physical punishment such as the deprivation of food or sleep, *e.g.*, *Reck v. Pate*, 367 U.S. 433. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted. *Culombe v. Connecticut*, *supra*, at 603.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973).

In *Rodgers v. Commonwealth*, 227 Va. 605, 318 S.E.2d 298 (1984), the Virginia Supreme Court summarized the current status of the law in the Commonwealth on this issue:

The test for voluntariness derives from federal constitutional law relating to the Fifth Amendment as applied to the States through the Fourteenth Amendment. In *Stockton*, we relied upon *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973), and concluded that in order to determine whether a statement is voluntary, we must decide, *in light of the totality of the circumstances*, whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired. 227 Va. at 140, 314 S.E.2d at 381.

When the scope of review and the test for voluntariness are considered together, the question that confronts us on this appeal becomes apparent. We must here determine whether, in light of the *totality of the circumstances*, the trial court was plainly wrong in concluding that Rodgers' statement to the Chesterfield police was essentially a free

and unconstrained choice on his part or, put another way, that his will was *not* overborne.

227 Va. at 609, 318 S.E.2d at 300 (emphasis added).

■ In *Rodgers*, the police officer said "[w]e're gonna [sic] submit this to the Commonwealth Attorney and then he makes the decision." Rodgers claimed that his statement to the police was involuntary because it was induced by a promise of leniency. In commenting upon this assertion, the Supreme Court stated:

We do not perceive this statement to be a promise of leniency. But even if it were a promise, such promises have generally been found insufficient to overbear a defendant's free will.

*Id.* at 616, 318 S.E.2d at 304.

Applying the totality of the circumstances test to the facts and circumstances of this case, the record discloses that Harrison was advised of his *Miranda* rights prior to making his statement to the police, but waived his rights. He was apprehended within minutes after leaving the bank in which the robbery occurred. He was confronted with the fact that he was caught and the evidence was overwhelming as to his guilt. He was told by the police officer that if he cooperated and told the truth, the Commonwealth would prosecute him on only three of eight suspected bank robberies. Confronted with this opportunity, he gave a statement to the police. There was no evidence of threats or violence or overbearing on the part of the police, who fulfilled this agreement and prosecuted only three of the eight robberies. There was nothing present to cause the accused to confess falsely. The promise on behalf of the Commonwealth was nothing more than one factor for the trial judge to consider, as a part of the totality of the circumstances in deciding the voluntariness of the statement.

We find that the record amply supports the conclusion of the trial court that Harrison's will was not overborne and that his statement reflects a free and unconstrained choice on his part. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

Baker, J., and Duff, J., concurred.