**Richmond**

VERONICA LOIS GWALTNEY

v.

COMMONWEALTH OF VIRGINIA

No. 2500-92-1

Decided January 3, 1995

COUNSEL

Herman T. Benn (Benn & Benn, on brief), for appellant.

G. Russell Stone, Jr., Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Janet F. Rosser, Assistant Attorney General, on brief), for appellee.

OPINION

KOONTZ, J.—Veronica Lois Gwaltney appeals her conviction for embezzlement in violation of Code § 18.2-111. Gwaltney contends the trial court erred in failing to suppress an inculpatory statement she made to police. She further contends the evidence was insufficient to prove the entrustment relationship necessary for embezzlement. For the reasons that follow, we affirm Gwaltney's conviction.

## I.

## BACKGROUND

The charge of embezzlement arose out of the disappearance of one thousand dollars from a teller's cash drawer at the bank where Gwaltney was employed. Lloyd Dobbs, a special agent with the Virginia State Police Bureau of Criminal Investigation testified at a suppression hearing preceding Gwaltney's trial that he was assigned to investigate the loss of these funds. At the time Gwaltney was interviewed by Dobbs, the investigation had not identified her or any other employee of the bank as a suspect. Gwaltney was given *Miranda* warnings prior to the interview and executed a rights waiver.

Dobbs testified that he did not recall telling Gwaltney he could "make it easier for [her] if [she] confessed." Rather, he testified that he told Gwaltney that if she cooperated she would be eligible for a plea agreement. Dobbs denied assuring Gwaltney that her confession would be between the two of them and "never go any further than this room."

Dobbs further testified that Gwaltney first told him that she had not taken the money but later broke down and stated that she had taken the money to pay bills. Upon receiving Gwaltney's admission of guilt, Dobbs contacted the lead investigator, who then conducted a separate interview. When this investigator "was starting to lose her," Dobbs returned from an adjoining observation room to the interview room. Dobbs testified that at that time Gwaltney had regained her composure and "flat out denied that she had made the statement" admitting her guilt.

Gwaltney testified that Dobbs had assured her that her confession would be kept in confidence. She further testified that Dobbs had promised she would not go to jail and told her to think about her children's welfare. Gwaltney denied that she admitted taking the money.

The trial judge found no evidence that Gwaltney's will had been overborne or that her statement was coerced and stated that he did not believe Dobbs had stated the conversation was in confidence. Accordingly, Gwaltney's suppression motion was overruled and the matter proceeded to trial. At trial, Dobbs reiterated his version of Gwaltney's confession. On cross-examination, Dobbs testified that he told Gwaltney that "you and I are the only ones in the room," and that he "was not going to spill [his] guts" about Gwaltney. Dobbs further testified he frequently did this to put the subject at ease.

Valerie Butler, the bank's branch manager, testified that on the day the cash was discovered missing, she, Gwaltney, head teller Debbie Owens, relief teller Nancy Allen, and new accounts officer Monica Green were all working at the bank. Only Gwaltney, Owens and Allen worked behind the teller line that day. Gwaltney left early for a doctor's appointment between 11:30 a.m. and noon and her cash drawer was reconciled at that time. Gwaltney returned at the close of business to comply with a policy of the bank that two employees be present when the doors are locked.

Allen's cash drawer was found to be one thousand dollars short when it was reconciled at 2:00 p.m. Butler and the other tellers were not able to account for the missing funds. On cross-examination, Butler conceded that, contrary to policy, tellers might leave their cash drawers unlocked and unattended for short periods during the day.

Nancy Allen testified that she was assigned to this branch of the bank as a relief teller. During the morning, Gwaltney asked Allen to complete a "stop payment request" that Gwaltney had received. She recalled thinking at the time that this was a strange request. Allen recounted how the bank personnel had attempted to find the shortage in her cash drawer and described her transactions for the day. She was certain she had not disbursed the one thousand dollars in error. On cross-examination, Allen stated that Gwaltney gave no reason for wanting Allen to complete the stop payment form. She denied that Gwaltney said there was a customer waiting at the drive-up window.

## II.

### SUPPRESSION OF INCULPATORY STATEMENT

The burden is upon the Commonwealth to prove that extra-judicial inculpatory statements were made voluntarily before they can be admitted in evidence against one charged with or suspected of the commission of a crime. *Campbell v. Commonwealth*, 194 Va. 825, 830, 75 S.E.2d 468, 471 (1953). Absent a knowing and intelligent waiver of the Fifth Amendment right against self-incrimination, a statement made by a suspect during in-custody interrogation is inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). Even when the suspect has made a valid waiver, an inculpatory statement is inadmissible if it appears that it was made involuntarily. *See Miller v. Fenton*, 474 U.S. 104, 106-09 (1985). Whether such a statement was voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances. *Id.* at 110-12.

In examining the totality of the circumstances, a court must consider a myriad of factors, including the defendant's age, intelligence, background and experience with the criminal justice system, the purpose and flagrancy of any police misconduct, and the length of the interview. *Harrison v. Commonwealth*, 3 Va. App. 260, 265, 349 S.E.2d 167, 169-70 (1986). The totality of the circumstances also includes moral and psychological pressures to confess emanating from official sources. *See Kauffmann v. Commonwealth*, 8 Va. App. 400, 406, 382 S.E.2d 279, 282 (1989).

This Court must make an independent evaluation of the evidence to determine whether Gwaltney's statement was voluntary.

In doing so, we may rely upon the observations of the trial judge and his findings of fact, except as to the ultimate issue of voluntariness. *Goodwin v. Commonwealth*, 3 Va. App. 249, 253, 349 S.E.2d 161, 163 (1986). Here, the evidence shows that Gwaltney was informed of her right to remain silent. She chose to waive that right and executed a form signifying that choice. While Gwaltney may have been influenced by the interrogation tactics of the officer, the interrogation was not so compelling or coercive that she was not able to consider her options and exercise her will. *See Wilson v. Commonwealth*, 13 Va. App. 549, 554-55, 413 S.E.2d 655, 658 (1992). Accordingly, we hold that the trial court did not err in refusing to suppress evidence of Gwaltney's inculpatory statement.

## III.

## EVIDENCE OF AN ENTRUSTMENT RELATIONSHIP

Gwaltney further contends the evidence was insufficient to show that an entrustment relationship existed between her and her employer with respect to money kept in another teller's cash drawer and that without such evidence her crime would be merely larceny. While we agree that the specific charge of embezzlement requires proof of elements different from those of common law larceny, we reject Gwaltney's assertion that the evidence presented was insufficient to establish those elements. Gwaltney's challenge to the sufficiency of the evidence in effect asserts that the Commonwealth was required to prove the crime charged in the indictment. We agree that the discretion in selection of charges afforded the Commonwealth is a two-edged sword. Once an indictment is brought and jeopardy has attached, the Commonwealth must prove that charge or a lesser-included offense in order to obtain a conviction. *See Martin v. Commonwealth*, 13 Va. App. 524, 529, 414 S.E.2d 401, 403 (1992). Discretion implies a thoughtful, informed choice, and here, the designation of embezzlement as the specific form of larceny to be proved was not mere caprice. Code § 18.2-111, as in effect at the time of Gwaltney's trial, required the Commonwealth to state with specificity the larceny statute it would rely on if requested to do so.[1] By stating the statute in the indictment, the Commonwealth avoided confusion and delay that might otherwise result. Accordingly, we assume the

---

[1] This requirement was deleted from the statute by amendment in 1994.

Commonwealth understood its duty and undertook to satisfy the burden it had imposed on itself.

Embezzlement, a statutory crime, was devised by legislatures to address an inadequacy in the common law of larceny. Originally, embezzlement was distinguished from common law larceny by the manner in which the property was first obtained. Whereas larceny required a contemporaneous unlawful possession and conversion by caption and asportation, an unlawful taking by trespass, a "black letter" embezzlement statute requires proof of a lawful possession prior to or contemporaneous with an intentional conversion by misappropriation. 26 Am. Jur. 2d *Embezzlement* § 3 (1966); *see also Medley v. State*, 600 So. 2d 957, 960 (Miss. 1992) ("Embezzlement differs from larceny in that it is the wrongful appropriation or conversion of property where the original taking was lawful or with the consent of the owner. Larceny involves trespass and the felonious intent must exist at the time of such taking").

■ "[O]ne who has mere custody of property, as distinguished from legal possession, and feloniously appropriates the property to his own use is guilty of larceny . . . . [T]he distinction between embezzlement and larceny may exist where the accused was given considerable control over the property." 26 Am. Jur. 2d *Embezzlement* § 5 (1966); *see also State v. Ward*, 562 A.2d 1040, 1042 (Vt. 1989) (a store clerk had "custody" rather than "possession" of the money which he took from his till, and so was guilty of larceny, not embezzlement). Thus, Gwaltney's assertion that her crime as proved at trial was common law larceny rather than larceny by embezzlement has potential merit *if the statutory definition of embezzlement in this Commonwealth parallels the traditional definition of that crime.*

Even with the enactment of embezzlement statutes, a deficiency remained in the law with respect to the conversion of property that was neither wholly in the possession of another nor lawfully in the possession of the malefactor. In some instances, legislatures have addressed these "gray areas" of theft by creating additional statutory crimes deemed to be larceny. *See, e.g., State v. Kornegay*, 326 S.E.2d 881, 896-97 (N.C. 1985) (discussing the origin of North Carolina's "Malfeasance of a Corporate Agent" statute). In this Commonwealth, our legislature has addressed the problem by adopting a broad definition of embezzlement, deeming

it to be punishable as larceny and defining an array of activities which fall within its ambit.

In pertinent part, Code § 18.2-111 defines embezzlement as the wrongful and fraudulent taking of "any money . . . which [the accused] shall have received . . . by virtue of his office, trust, or employment." We recognize that "[t]he plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction." *Branch v. Commonwealth*, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992). Nonetheless, "[a]lthough penal laws are to be construed strictly [against the Commonwealth], they 'ought not to be construed so strictly as to defeat the obvious intention of the legislature.' " *Willis v. Commonwealth*, 10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974)). Nor should a statute be construed so that it leads to absurd results. *Branch*, 14 Va. App. at 839, 419 S.E.2d at 424.

The definition of embezzlement in Code § 18.2-111 does not parallel the traditional definition of that crime; rather, it proscribes a broad category of theft offenses, including embezzlement, which fall outside the common law definition of larceny. It is neither a curious nor strained construction of the statute to conclude that the legislature intended to proscribe conversions of property accomplished by virtue of the position of trust given any employee.

This Court has said that "[t]o establish the statutory crime of embezzlement under Code § 18.2-111, it is necessary to prove that the accused wrongfully appropriated to her use or benefit, with the intent to deprive the owner thereof, of the property entrusted to her by virtue of her employment." *Waymack v. Commonwealth*, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987) (footnote omitted). Gwaltney was placed in a position of trust by her employer. While she was directly responsible for accounting only for the receipt and disbursement of funds to and from the cash drawer assigned to her, Gwaltney's position of trust extended beyond the confines of her station to the entire teller line and other areas of the bank where her duties would bring her into proximity of her employer's property. The entrustment was inherent in her employment rather than in the daily act of receiving into her possession and dispersing funds from a specific cash drawer. But for the trust placed in her by her employer, Gwaltney

would not have been able to accomplish the conversion of cash from another teller's cash drawer to her own use. Accordingly, the Commonwealth established the wrongful taking of money received "by virtue of [her] office, trust or employment" in violation of Code § 18.2-111.

For these reasons we affirm Gwaltney's conviction.

*Affirmed.*

Barrow, J., and Elder, J., concurred.