# CIRCUIT COURT OF THE CITY OF WINCHESTER

Commonwealth of Virginia

v.

Dennis Ray Legg

October 24, 1995

Case Nos. (Criminal) 95-301 and 95-302

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the motion of the defendant to suppress two statements. One given to the police in a custodial interrogation on May 28, 1995, and a second noncustodial statement made by the defendant in July 1995 to his wife in the presence of a police officer after charges had been filed against the defendant and he had had an attorney appointed to represent him. Upon consideration, the Court has decided to deny the motion to suppress for the following reasons.

## I. *Statement of Material Facts*

The following facts have been established by a preponderance of the evidence.

On May 28, 1995, Investigator James Bailous of the Winchester Police Department was investigating the alleged sexual abuse of a four year old minor boy. Investigator Bailous had probable cause to suspect that Dennis Legg had committed the abuse.

On May 28, 1995, Investigator Bailous went to the defendant's home and asked the defendant to accompany him to the police station which the defendant did. An interview of the defendant was conducted in an interview room in a secure area of the Winchester City Police Department.

Prior to being questioned, the *Miranda* warnings were given to the defendant, and he decided to talk with the officer. At no time during the interrogation did the defendant ever refuse to talk to the officer, nor did he ever ask to talk to an attorney.

Both a tape and a written transcript were made of the interview. During the course of the interrogation, it is clear that Investigator Bailous was a skilled police interrogator and that he used a wide range of interrogation techniques to obtain a confession from the defendant, which included direct confrontation, some deception, overstatements as to what Bailous knew with respect to the incident, some implied promises (*see e.g.*, transcript, pages 9-10 and 12), and emotional displays. Bailous raised his voice and did use some profanity incident to his questions, but no profanity was directed directly at the defendant. Bailous never berated, denigrated, or threatened the defendant to extract the confession.

The defendant is an indigent and is represented by the public defender. Defendant Legg is thirty, having been born September 25, 1965, and he is married and employed. Although he said that he went to school through the ninth grade, he can neither read nor write, except to write his name. Most of his education was in special education classes. A recent intelligence test indicates that his I.Q. is 67, which places him in the lower one to two percent of the adult population of the United States. He is considered to be "mildly retarded." He has had prior experience with the criminal justice system. Although simple, he did not appear guileless. He remained calm throughout the questioning despite the emotional ranges and techniques employed by his interrogator. He responded appropriately to all the questions, indicating that he understood them. A clinical psychologist testified that persons of lower intelligence like Legg are more susceptible to influence and psychological pressure.

After a break in the interrogation (which occurred between pages 12 and 13 of the transcript), during which time the defendant testified that the investigator hit a chair and put his head down on his desk, which appear to have been theatrical ploys of the interrogator, there was a discernible change in the tenor of the interrogation. It then proceeded by a long series of initial denials by the defendant followed by skillfully extracted confessions to the crime. Later in the interrogation the defendant's testimony actually became demonstrative in nature. See, for example, transcript pages 17 and 22. Towards the end of the question, the defendant began to give some narrative responses. Page 19-20. He did not claim to be threatened, and he admitted he was making the statement on his own free will. The total interrogation only took about fifty minutes, including the breaks.

In July 1995, after the defendant had been charged and an attorney appointed for him, Investigator Bailous was talking to the defendant's wife, when the defendant approached. The wife was inquiring about the

incident, and Bailous told the defendant that he would have to tell his wife the truth about what occurred. The wife then asked the defendant in Bailous' presence, "Did you mess with that boy?" The defendant replied, "Yes."

## II. *Conclusions of Law*

### 1. *Waiver Determined From the Totality of the Circumstances*

The rule governing the determination of the voluntariness of a defendant's waiver of *Miranda* rights is stated in *Gray v. Commonwealth*, 233 Va. 313, 324, 356 S.E.2d 157 (1987):

> A defendant's waiver of his *Miranda* rights is valid only if the waiver is made knowingly, voluntarily and intelligently. *Miranda*, 384 U.S. at 475. Whether a statement is voluntary is ultimately a legal rather than a factual question. *See Miller v. Fenton*, 474 U.S. 104, 110, 106 S. Ct. 445, 450 (1985). Subsidiary factual questions, however, are entitled to a presumption of correctness. *Id.* at 112, 106 S. Ct. at 451. The test to be applied in determining voluntariness is whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). In determining whether a defendant's will has been overborne, courts look to "the totality of all the surrounding circumstances," *Id.* at 226, including the defendant's background and experience and the conduct of the police. *Correll v. Commonwealth*, 232 Va. 454, 464, 352 S.E.2d 353, 357 (1987); *Stockton*, 227 Va. at 140, 314 S.E.2d at 381.

The Commonwealth has borne the burden of proof by a preponderance of the evidence that the defendant's waiver of his *Miranda* rights prior to making the May 28, 1995, statement was voluntary.

### 2. *Voluntary Statement*

In *Midkiff v. Commonwealth*, 250 Va. 262 (1995), the Supreme Court stated:

> Whether a statement is voluntary is ultimately a legal rather than a factual question . . . . The test to be applied in determining voluntariness is whether the statement is the "product of an

essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired." . . . In determining whether a defendant's will has been overborne, courts look to the "totality of all the surrounding circumstances. . . . including the defendant's background and experience and the conduct of the police.

In *Harrison v. Commonwealth*, 3 Va. App. 260, 264-265, 349 S.E.2d 167 (1986), the Court of Appeals reviewed the specific factors to be considered by the Court in assessing the voluntariness of the defendant's statement:

The Due Process Clause does not mandate that the police forgo all questioning, or that they be given carte blanche to extract what they can from a suspect. "The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." *Culombe v. Connecticut, supra*, at 602.

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances — both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, *e.g., Haley v. Ohio*, 332 U.S. 596; his lack of education, *e.g., Payne v. Arkansas*, 356 U.S. 560; or his low intelligence, *e.g., Fikes v. Alabama*, 352 U.S. 191; the lack of any advice to the accused of his constitutional rights, *e.g., Davis v. North Carolina*, 384 U.S. 737; the length of detention, *e.g., Chambers v. Florida, supra*; the repeated and prolonged nature of the questioning, *e.g., Ashcraft v. Tennessee*, 322 U.S. 143; and the use of physical punishment such as the deprivation of food or sleep, *e.g., Reck v. Pate*, 367 U.S. 433. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal

significance of how the accused reacted. *Culombe v. Connecticut, supra,* at 603.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 225-26 (1973).

The "voluntary" test is multifactored, difficult to apply, and it is elastic enough to embrace a wide range of ostensibly, dissimilar circumstances. As Professors LeFave and Israel observe in their hornbook, *Criminal Procedure,* 2d ed., § 6.2 (West 1992):

> One major defect in the due process "voluntariness" test is that it leaves the police without needed guidance. This is in part attributable to the fact that the term itself is imprecise. Virtually all incriminating statements — even those made under brutal treatment — are "voluntary" in the sense of representing a choice of alternatives, yet very few are "voluntary" in the sense that they would have been given even absent official pressure of some kind. Moreover, a standard which varies from case to case depending upon how dull or alert or how soft or tough a particular suspect happened to be was not likely to have much of an impact upon the police .... .
>
> Because of the aforementioned ambiguity, even conscientious trial judges were left without guidance for resolving confession claims.

Despite its vagueness, the totality of circumstances test must be applied to determine whether the defendant voluntarily made his statement.

### 3. *Age and Intelligence*

The age, intelligence and experience of the defendant with the legal system are factors which the court must consider in those cases involving a defendant, who, for any reason, may be susceptible to having his will overborne by an experienced interrogator. *See Groog v. Commonwealth,* 6 Va. App. 49, 371 S.E.2d 556 (1988) (custodial interrogation of sixteen year old).

The case of *Terrill v. Commonwealth,* 12 Va. App. 285, 291-292, 403 S.E.2d 387 (1991), is instructive. There the defendant was of low intelligence, and the Court of Appeals held that the defendant's confession was voluntary, stating:

> "In order to determine whether a statement is voluntary, we must decide, in light of the totality of the circumstances, whether the statement is the product of an essentially free and unconstrained

choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired." *Rodgers v. Commonwealth*, 227 Va. 605, 609, 318 S.E.2d 298, 300 (1984) (citing *Stockton v. Commonwealth*, 227 Va. 124, 140, 314 S.E.2d 371, 381 (1984)). "The totality of the circumstances include not only the details of the interrogation, but also the characteristics of the accused." *Kauffmann v. Commonwealth*, 8 Va. App. 400, 405, 382 S.E.2d 279, 281 (1989). We must consider the personal characteristics of the accused, including his intelligence, education, prior experience with police, use of drugs or alcohol, emotional or mental disability, and the deprivation of physical comforts. See R. Bacigal, *Virginia Criminal Procedure*, § 7-2 (2d ed. 1989). We also must consider the interrogation techniques employed, including evidence of trickery and deceit, psychological pressure, threats or promises of leniency, and duration and circumstances of the interrogation. *Id.* However, they "are merely factors to be considered in determining whether the Commonwealth has met its burden of proving voluntariness by a preponderance of the evidence." *Id.*

The intelligence of the accused is a significant factor to be considered in determining the voluntariness of a statement. There is no strict standard for the acumen below which the product of interrogation will be deemed involuntary. In *Simpson v. Commonwealth*, 227 Va. 557, 318 S.E.2d 386 (1984), the Court determined that a twenty year old defendant with an eighth grade education, an IQ of 78, with "borderline intelligence" who was determined to function "at a second grade level" voluntarily made inculpatory statements to the police. *Id.* at 564, 318 S.E.2d at 390. The Court based its ruling on the fact that the defendant in *Simpson* had been advised of his *Miranda* rights three times and according to expert testimony had the street sense to understand his rights.

In *Washington v. Commonwealth*, 228 Va. 535, 323 S.E.2d 577 (1984), a twenty-three year old defendant had an IQ score of 69, which is in the "upper limits of mild mental retardation." The defendant, however, had a ninth grade education. The defendant also asserted that his interrogation was "unreasonably long and wearisome." In finding that the defendant's inculpatory

statements were voluntarily made, the Court referred to the testimony of a witness who had stated:

> The defendant . . . demonstrated a basic familiarity with the workings of the criminal justice system and with its terminology. In this connection, [the defendant] . . . testified to two previous encounters with the criminal justice system, when he was 14 and 16 years old, respectively. He said that on each of these occasions he had been advised of his *Miranda* rights.

Although in this case the defendant was of low intelligence, he voluntarily went with the police and was always willing to talk with the police. A confession is the product of coercion when the behavior of the state's law enforcement officers is such as to "overbear the [accused's] will to resist and bring about a confession not freely self-determined." *Rogers v. Richmond*, 365 U.S. 534, 544, 5 L. Ed. 2d 760 (1961); *accord Ferguson v. Boyd*, 566 F.2d 873 (4th Cir. 1977) (coercion may be mental as well as physical). This is a case of persistent denial, which was changed as a result of skilled interrogation; it is not a case where the defendant's free will was overborne.

## 4. Interrogation Techniques

Police interrogation is not subject to either the rules of evidence or those of polite society. In questioning a suspect, the police interrogator may use deception, veiled promises, and psychological pressures of various kinds without transgressing the voluntariness standard.

As the Court of Appeals recently noted in *Novak v. Commonwealth*, 20 Va. App. 373 (1995):

> While "[a] deliberate falsehood by a police officer in the course of his duties may undermine the respect that significant segments of the public may have for law enforcement and the system of justice[,]" *Wilson v. Commonwealth*, 13 Va. App. at 554, 413 S.E.2d at 658, " 'a lie on the part of an interrogating police officer does not, in and of itself, require a finding that a resulting confession was involuntary'." *Id.* at 555, 413 S.E.2d at 658 (quoting *Rodgers v. Commonwealth*, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984)).

In *Rodgers v. Commonwealth*, 227 Va. 605, 615-616, 318 S.E.2d 298 (1984), the Supreme Court observed:

In *Shifflet v. Commonwealth*, 55 Va. (14 Gratt.) 652 (1858), the interrogator asked a prisoner, "What do you mean by what you say? In the name of God and all that is holy, have you let this charge rest on your mother, and she innocent of it?" *Id.* at 662-63. This Court found the ensuing confession voluntary. In so doing, we did not find it necessary to make specific mention of the religious remark. We merely concluded that the words used by the interrogator "do not naturally import any promise or threat, and were not so construed by the judge who saw and heard the witnesses." *Id.* at 664.

In three recent cases from other jurisdictions, religious remarks were viewed as only one part of the totality of the circumstances and were held not to be coercive. *See State v. Haridmon*, 310 N.W.2d 564 (Minn. 1981) (religious remarks "were not improper or coercive"); *Barrera v. State*, 99 Wis. 2d 269, 298 N.W.2d 820 (1980) (statement that defendant would have to face up to it when he met his maker was not "so overbearing as to render his confession involuntary"); *cert. denied*, 451 U.S. 972 (1981); *People v. Bowen*, 87 Ill. App. 3d 221, 408 N.E.2d 993 (1980) (entreaty to defendant "to make peace with yourself, your God, and your children" said not to amount to psychological coercion).

Even a lie on the part of an interrogating police officer does not, in and of itself, require a finding that a resulting confession was involuntary. In *Frazier v. Cupp*, 394 U.S. 731 (1969), the Supreme Court made clear that even an outright falsehood by a police interrogator is but another factor to be considered in evaluating the totality of the circumstances.

The totality of the circumstances also includes moral and psychological pressures to confess emanating from official sources. *See Kauffmann v. Commonwealth*, 8 Va. App. 400, 406, 382 S.E.2d 279, 282 (1989). In *Kauffmann v. Commonwealth, supra*, the Defendant was charged with the aggravated sexual battery of his fourteen year old daughter, who had thrown herself in front of a train and was killed. The defendant was upset and grieving over his daughter's recent death, and the interrogators played upon the daughter's death in their questioning of the defendant, and the Court of Appeals upheld the voluntariness of the confession, noting:

In *Williams v. Commonwealth*, 234 Va. 168, 174, 360 S.E.2d 361, 365 (1987), *cert. denied*, 484 U.S. 1020, 98 L. Ed. 2d 681, 108 S. Ct. 733 (1988), the Virginia Supreme Court held that an offer to provide psychological help does not render a resulting confession involuntary because "this falls far short of a confession induced by the hope of gaining some advantage or avoidance of some evil." *Id.*

It is not easy to reconcile all the opinions on voluntariness. *See, e.g., Kauffman v. Commonwealth, supra* (dissent), but the law permits the use of a wide range of psychological techniques to extract confessions in implicit recognition of the inquisitorial nature of police examination. The defendant's remedy for unpleasant interrogation is to either stop talking or to ask to speak to an attorney, neither of which were done in this case.

### 5. *Totality of the Circumstances*

Examining the totality of the circumstances surrounding the May 28, 1995, statement, it does not appear that the will of the defendant to refuse to talk to the police was overborne, so that statement was voluntary.

### 6. *Statement After Counsel Appointed*

As the United States Supreme Court observed in *Maine v. Moulton*, 475 U.S. 159, 106 S. Ct. 477, 88 L. Ed. 2d 481, 496 (1985):

> The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State . . . . This guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded to the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated whenever — by luck or happenstance — the State obtains incriminating statements from the accused after the right to counsel has attached.

The July 1995, statement was obtained by happenstance. It was not solicited by Bailous, and it was spontaneously given in response to a question from the Defendant's wife. This was not a knowing exploitation of the Defendant's Sixth Amendment right to counsel.

### III. *Decision*

For the foregoing reasons, (1) Defendant's motion to suppress the May 28, 1995, statement is denied, and (2) Defendant's motion to suppress the July 1995 statement made to the Defendant's wife in the presence of Bailous is denied.