**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4681**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  v.

DARRELL RICARDO LEWIS,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:09-cr-00093-MOC-1)

Submitted: January 30, 2012      Decided: February 16, 2012

Before AGEE and DIAZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Chiege O. Kalu Okwara, LAW OFFICE OF CHIEGE O. KALU OKWARA, Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Melissa L. Rikard, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Darrell Ricardo Lewis seeks to appeal his conviction following a conditional guilty plea to possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (2006). Pursuant to rights reserved by his plea agreement, Lewis bases this appeal on the district court's denial of his motion to suppress the firearm and Lewis' incriminating statements. We affirm.

When considering a district court's ruling on a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011). When a suppression motion has been denied by the district court, this court construes the evidence in the light most favorable to the Government. Id.

Lewis first argues that the district court erred in finding that the firearm was lawfully seized during a protective search of his vehicle. A temporary detention of an automobile, even if only for a limited time or purpose, constitutes a Fourth Amendment seizure. Whren v. United States, 517 U.S. 806, 809-10 (1996). Because a routine "traffic stop is . . . more like an investigative detention than a custodial arrest," its limitations must be evaluated under the "dual inquiry" set out in Terry v. Ohio, 392 U.S. 1 (1968). United States v.

2

Guijon-Ortiz, 660 F.3d 757, 764 (4th Cir. 2011) (internal quotation marks omitted). Under this analysis, we determine whether the stop "was justified at its inception" and "whether the continued stop was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Id. (internal qutoation marks omitted).

Regarding the first Terry inquiry, if an officer has probable cause or reasonable suspicion to believe a suspect has violated a traffic law, the officer's decision to stop the suspect's car is reasonable under the Fourth Amendment, regardless of the officer's subjective motivation for the stop. See Whren, 517 U.S. at 813; United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993). In evaluating the second inquiry, we must consider whether the officers "'diligently pursue[d] the investigation of the justification for the stop.'" Guijon-Ortiz, 660 F.3d at 768 (quoting United States v. Digiovanni, 650 F.3d 498, 509 (4th Cir. 2011)).

A lawful routine traffic stop justifies detaining the vehicle's occupants for the time necessary to request a driver's license and registration, run a computer check, and issue a citation. Digiovanni, 650 F.3d at 507. The officer also is permitted to request passenger identification or inquire into unrelated matters, as long as doing so does not measurably prolong the length of the traffic stop. Guijon-Ortiz, 660 F.3d

3

at 765. However, the officer may not "'definitively abandon[] the prosecution of the traffic stop and embark[] on another sustained course of investigation'" absent additional justification. Id. at 766 (quoting United States v. Everett, 601 F.3d 484, 495 (6th Cir. 2010)).

Because a defective tag light violates N.C. Gen. Stat. § 20-129(d) (2011), we conclude that the district court did not err in finding the initial stop of Lewis' vehicle lawful. Additionally, we conclude that the officers promptly and diligently pursued the purpose of the traffic stop, and neither the scope nor the duration of the traffic stop violated Lewis' Fourth Amendment rights.

Turning to whether the protective search of the car violated Lewis' Fourth Amendment rights, officers are not permitted to "conduct automobile searches whenever they conduct an investigative stop." Michigan v. Long, 463 U.S. 1032, 1049 n.14 (1983). However, the Supreme Court has held that an officer may search the passenger compartment of an automobile if he "possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049 (internal quotation marks omitted). We must evaluate whether the officer possessed

4

a reasonable belief of (1) the suspect's dangerousness, and (2) the possibility that the suspect might gain control of weapons inside the vehicle. United States v. Holmes, 376 F.3d 270, 277 (4th Cir. 2004).

We conclude that the officer's search of the car was lawful. Given the totality of the circumstances—including Lewis' evasive behavior and visible nervousness; his presence in a high-crime area at a late hour; the vehicle's missing tag light; Lewis' inability to articulate clear answers to simple questions; his numerous prior arrests for breaking and entering and drug and firearms violations; and the officer's knowledge that Lewis and his passenger generally matched the description of robbery suspects and carried tools consistent with robbery— the officer reasonably believed that Lewis could be armed and dangerous. Moreover, Lewis' lack of restraint and close proximity to the driver's side door permit the conclusion that Lewis could access any weapons within the vehicle. See Long, 463 U.S. at 1051-52; United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007).

Lewis argues that the limitations on an automobile search incident to arrest established by Arizona v. Gant, 556 U.S. 332 (2009), should apply to his case because the officer exceeded the scope of the traffic stop and his seizure was a de facto arrest. Contrary to Lewis' assertion, the subjective

5

reasoning of neither the officer nor the defendant is sufficient to convert a <u>Terry</u> stop into an arrest. <u>See</u> <u>Elston</u>, 479 F.3d at 319. We therefore conclude that the limited restraint placed on Lewis prior to the search did not amount to a formal arrest that would trigger <u>Gant</u>'s protection.

Lewis also argues that his incriminating statements were taken following an involuntary waiver of rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 475 (1966). Any incriminating statement made during a custodial interrogation is presumed involuntary and inadmissible unless preceded by <u>Miranda</u> warnings. <u>See</u> <u>id.</u> at 467-73; <u>Oregon v. Elstad</u>, 470 U.S. 298, 307 (1985). A defendant may validly waive the rights conveyed by <u>Miranda</u> warnings, including the right to remain silent, if, under the totality of the circumstances, (1) the defendant voluntarily relinquished his rights as "the product of free and deliberate choice rather than intimidation, coercion, or deception" by law enforcement; and (2) "the waiver [was] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>United States v. Cristobal</u>, 293 F.3d 134, 139-40 (4th Cir. 2002). Under the first prong, the relevant inquiry "is whether the defendant's will has been overborne or his capacity for self-determination critically impaired because of coercive

police conduct." <u>Id.</u> at 140 (internal quotation marks and citations omitted).

A confession may be involuntary if "obtained by any direct or implied promises, however slight, or by the extension of any improper influence." <u>United States v. Shears</u>, 762 F.2d 397, 401 (4th Cir. 1985). Police officers are permitted to "make some representations to a defendant," including "promise[s] to make a defendant's cooperation known to the prosecutor," without effectively coercing a confession. <u>Id.</u> at 401-02. However, promises by government agents must be viewed from the perspective of the defendant to determine whether they are involuntary. <u>Id.</u> at 402 & n.5. Where a defendant reasonably perceives that he has been promised his charges will be dropped in exchange for his confession, the promise is not kept, and the promise constituted the driving force behind his confession, the confession is involuntary. <u>See</u> <u>id.</u> at 401-03 & n.2,4,5; <u>Grades v. Boles</u>, 398 F.2d 409, 412-13 (4th Cir. 1968).

We conclude that Lewis knowingly and voluntarily waived his <u>Miranda</u> rights and that his statements were not the product of coercion or specific guarantees of leniency. Although Lewis felt substantial pressure to confess in exchange for possible leniency, this pressure was internal and not the result of the officers' actions. Thus, we conclude the district court did not err in denying Lewis' suppression motion. <u>See</u>

7

United States v. Mashburn, 406 F.3d 303, 309-10 (4th Cir. 2005);

Shears, 762 F.2d at 401-02.

Accordingly, we affirm Lewis' conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED